[No. 31252.   Department Two.   May 1, 1950.]

GEORGENE COOK, *a Minor, by Helen Cook, her Guardian ad Litem, Appellant,* v. JACK SEIDENVERG *et al., Respondents.*[1]

[1]Reported in 217 P. (2d) 799.

*Leon L. Wolfstone,* for appellant.

*W. E. Du Puis* and *L. W. Bever,* for respondents.

HAMLEY, J.—This action was brought on behalf of the minor child of a tenant in an apartment building, to recover damages in the sum of $39,500 from the owners of the building for injuries sustained by the child. The trial court sustained demurrers to the complaint and amended complaint. Plaintiff declined to plead further and elected to stand on the amended complaint. The trial court accordingly entered judgment dismissing the amended complaint with prejudice. Plaintiff has appealed.

The only question before us is whether the amended complaint states a cause of action.

The facts alleged in the amended complaint, and admitted for the purposes of the demurrer, may be briefly summarized. The accident out of which this action arose occurred on December 6, 1948. For some time prior to that date, the six-year-old child who was injured, was living

with her mother, Mrs. Cook, who was a tenant in an apartment building in Seattle owned and operated by respondents. At this time, there was in full force and effect a Seattle city ordinance (as amended) defining healthful temperatures and requiring the maintenance of certain minimum temperatures in apartment buildings.

The apartment building in question was equipped with a central heating plant which was under the sole control of respondents. This plant was capable of providing all heat necessary to comply fully with the city ordinance. However, respondents willfully refused and neglected to provide the degree of heat required by the ordinance. From time to time prior to December 6, 1948, Mrs. Cook notified respondents of this deficiency and demanded that sufficient heat be provided; but to no avail. It was therefore necessary for her and other tenants of the building to provide themselves with movable electric plug-in heaters. Respondents were fully familiar with the type and location of the electric heater being used in Mrs. Cook's apartment. On the morning of December 6, 1948, as this electric heater was being used to supply heat which respondents were by ordinance obliged to furnish, the child's nightgown became ignited, resulting in serious and permanent injuries.

The allegation of negligence, as set forth in the amended complaint, is based upon two grounds: (1) The violation of a city ordinance requiring landlords to provide a certain minimum degree of heat; and (2) the breach of a duty, arising by virtue of the landlord-tenant relationship and independently of ordinance requirements, to provide such heat.

The violation of a city ordinace is negligence *per se*. *Geer v. Gellerman,* 165 Wash. 10, 4 P. (2d) 641; *Schatter v. Bergen,* 185 Wash. 375, 55 P. (2d) 344; *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564. But it is fundamental that such negligence is not actionable unless the statute or ordinance violated was designed to prevent the kind of accident and injury involved in the particular case. *Champlin Refining Co. v. Cooper,* 184 Okla. 153, 86 P. (2d) 61; *Phoenix Amusement Co. v. White,* 306 Ky. 361, 208 S. W. (2d) 64;

*East Texas Motor Freight Lines v. Loftis,* 223 S. W. (2d) (Tex.) 613; *Wright v. South Carolina Power Co.,* 205 S. C. 327, 31 S. E. (2d) 904; Prosser on Torts 269, § 39; 2 Restatement, Torts 752, § 286 (c); 38 Am. Jur. 834, Negligence, § 163; 45 C. J. 726, Negligence, § 111. A statement of this principle, which has been quoted with approval in many cases, is that set forth in 38 Am. Jur., *supra:*

"An action for negligence based upon an alleged violation of a statute or ordinance cannot be maintained where it appears that the statute or ordinance was enacted or ordained for a purpose wholly different from that of preventing the injury of which complaint is made. To afford a right of action for injury from the violation of a statute or ordinance, the complainant's injury must have been such as the statute or ordinance was intended to prevent. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong, even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was caused by his exposure to a hazard from which it was the purpose of the statute to protect him."

We have several times applied the analogous principle, set forth in clause (a) of § 286, Restatement of Torts, cited above, to the effect that the violation of a statute or ordinance is not actionable negligence except with reference to persons intended to be protected by such statute or ordinance. See *Rampon v. Washington Water Power Co.,* 94 Wash. 438, 162 Pac. 514, L. R. A. 1917C, 998; *Bogdan v. Pappas,* 95 Wash. 579, 164 Pac. 208; *Stoddard v. Smathers,* 120 Wash. 53, 206 Pac. 933; *Winsor v. Fonda,* 126 Wash. 402, 218 Pac. 219; *Byrne v. Stanford,* 159 Wash. 271, 292 Pac. 1014.

On like reasoning, and consistent with the general rule followed in other jurisdictions, we conclude that the violation of the heating ordinance of the city of Seattle, as alleged in the amended complaint, although constituting negligence *per se,* does not give rise to liability in this case unless it can be said that such ordinance was designed to

prevent tenants and their families from being injured as a result of using auxiliary heating appliances.

The original ordinance in question, and an amendatory ordinance (both of which will hereinafter be referred to as one ordinance), bear the following titles:

Ordinance No. 39104. "An Ordinance Relating to Public Health, defining healthful temperature, and providing for and requiring the maintenance of healthful temperature in certain buildings and places in the City of Seattle, providing penalties for violations thereof, and declaring an emergency."

Ordinance No. 47936. "An Ordinance Relating to the Public Health and Amending Sections 2, 5, 6 and 8, of Ordinance No. 39104 and declaring an emergency."

According to the briefs, this ordinance requires apartment house landlords to maintain a minimum temperature of sixty degrees between seven a. m. and eight a. m. A minimum temperature of sixty-five degrees is required between eight a. m. and nine a. m. We are not informed what minimum temperature is prescribed by the ordinance for the remaining hours of the day. This accident occurred at about eighty-thirty a. m., when a minimum temperature of sixty-five degrees was required.

We think it is plain from the title of this ordinance and from the terms thereof which have been brought to our attention, that the purpose of the enactment was to protect tenants from discomfort and illness due to the maintenance of subnormal temperatures in apartment buildings where central heating is provided and is under the sole control of the landlord. We do not believe that one of the purposes of the ordinance was to obviate the necessity of the tenants using portable electric plug-in heaters because of any supposed danger inherent in the use of such appliances.

Movable electric heating appliances are not dangerous instrumentalities. Such heaters are undoubtedly in use in thousands of homes and apartments in the city of Seattle. We are not aware of any restriction, by ordinance or otherwise, upon the sale or use of such devices.

The minimum temperatures prescribed in the heating ordinance also indicate that this enactment was not designed to obviate all necessity for auxiliary heating equipment. There are few people who would regard these minimum temperatures as comfortable and, in recognition of this, most landlords supply heat during these hours in excess of ordinance requirements. But where the landlord furnishes no more heat than specified in the ordinance, tenants have no alternative but to supply auxiliary heating, or suffer the discomfort, or move out. Therefore, even assuming full literal compliance with the heating ordinance, the possibility that tenants would resort to auxiliary heating was contemplated. Accordingly, the ordinance was not designed to prevent or render wholly unnecessary the use of such devices either because of any supposed danger inherent in such use or for any other reason.

In this case, we assume, on the basis of the pleadings, that the electric plug-in heater would not have been in use at the time of the accident (eight-thirty a. m.) if the landlord had supplied the room temperature of sixty-five degrees required by ordinance. But since, as we have indicated above, this ordinance was not enacted with reference to any hazard involved in the use of such heaters, the appellant's injuries were not such as the ordinance was intended to prevent. Stated in the manner of Restatement of Torts, *supra*, the ordinance is not intended to protect an interest of the appellant from this particular hazard. This being so, the negligence of respondents in violating the ordinance did not give rise to liability, and the amended complaint, in so far as it grounds negligence upon such violation, does not state a cause of action.

While appellant places chief reliance upon the alleged violation of the heating ordinance, the amended complaint also alleges, as a basis of liability, a breach of duty arising by virtue of the landlord-tenant relationship and independently of ordinance requirements.

To establish liability on this basis for damages resulting from the injury, it would be necessary to hold (1) that

respondents, as apartment house landlords, had an obligation, irrespective of ordinance, to furnish a reasonable amount of heat; (2) that they failed to supply the required amount of heat (admitted by the demurrer); (3) that, under the facts of this case, such failure constituted negligence with respect to appellant; and (4) that such negligence was the proximate or legal cause of the injury. Assuming an answer favorable to appellant on the first three of these propositions we are of the opinion that the fourth must, in any event, be resolved against appellant—the assumed negligence was not a proximate or legal cause of the injury.

■ There can be no liability for an act of negligence unless such act was the proximate cause of the injury. *Johanson v. King County,* 7 Wn. (2d) 111, 109 P. (2d) 307.

■ Where, as here, the facts are taken as undisputed, and the inferences therefrom are plain and do not admit of reasonable doubt or difference of opinion, the question of proximate cause becomes a question of law for the court. *Bracy v. Lund,* 197 Wash. 188, 84 P. (2d) 670; 2 Restatement, Torts 1171, § 434.

■ The allegation of the amended complaint that the accident was a direct and proximate result of respondents' alleged negligence, is therefore a mere conclusion of law. A demurrer does not admit conclusions of law. *Hamp v. Universal Auto Co.,* 173 Wash. 585, 24 P. (2d) 77; *Moen v. Zurich General Accident & Liability Ins. Co.,* 3 Wn. (2d) 347, 101 P. (2d) 323.

■ In *Eckerson v. Ford's Prairie School Dist. No. 11,* 3 Wn. (2d) 475, 101 P. (2d) 345, we defined the term "proximate or legal cause" as follows:

"An actual cause, or cause in fact, exists when the act of the defendant is a necessary antecedent of the consequences for which recovery is sought, that is, when the injury would not have resulted 'but for' the act in question. But a cause in fact, although it is a *sine qua non* of legal liability, does not of itself support an action for negligence. Considerations of justice and public policy require that a certain degree of proximity exist between the act done or omitted and the harm sustained, before legal lia-

bility may be predicated upon the 'cause' in question. It is only when this necessary degree of proximity is present that the cause in fact becomes a legal, or proximate, cause.

"The most usual definition of proximate cause of an event is: that cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the event, and without which that event would not have occurred. *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9; 1 Sherman & Redfield, Negligence (6th ed.), § 26; 1 Cooley on Torts (3d ed.), 124."

From the facts alleged, it is plain to us that the accident which caused appellant's injuries was not part of a natural and continuous sequence beginning with respondents' failure to provide heat. It was, instead, the result of an intervening act or force constituting a new cause independent of respondents' act of negligence.

By "intervening act or force" we are not referring to the mere act of the mother in obtaining and utilizing a portable electric heater. That act may well be regarded as part of a natural and continuous sequence resulting from respondents' failure to provide heat. But we know that there must have been some additional and further act or force in operation here, since the normal use of such electrical appliances rarely results in accidents of this kind. The pleadings are silent as to exactly how the accident occurred, and so we are not informed as to the precise nature of the intervening act or force. But we do know that it must have been due either to the negligence of the mother in placing the heater in a position of danger, or in knowingly using a defective heater, or in failing to supervise the child's use of the heater; or the act of the child, independent of any negligence, in coming in too close proximity to the heater; or a latent defect in the heater which caused the child's clothes to ignite; or some other intervening circumstance of like nature.

In our opinion, any of these circumstances must, under the facts of this case, be held to constitute a superseding cause of harm within the meaning of that term as defined above. Instances of negligence in the use of such portable heaters with resulting injuries of the kind suffered

here, are relatively infrequent. Cases where the use of such heaters results in such injuries independent of any act of negligence are even more rare. Accordingly, respondents are not chargeable with foreseeing that, if they failed to provide adequate heat, injuries resulting from the negligence of tenants in using such heaters, or resulting from other forces independent of negligence, would occur.

Where such intervening act or force is not reasonably foreseeable, it must be regarded as a superseding cause negating the claim of proximate or legal cause. As was said in *Newman v. Steuernagel*, 132 Cal. App. 417, 420, 22 P. (2d) 780 (quoted with approval in *Bracy v. Lund*, 197 Wash. 188, 200, 84 P. (2d) 670):

"It is the general rule that an original act of negligence is not a proximate cause of an injury when the same directly results from an intervening act of another party which was one not to be reasonably anticipated by the first party as reasonably likely to occur and follow through and from his own act."

To the same effect see *Johnson v. Central Bldg. Co.*, 35 Wn. (2d) 299, 212 P. (2d) 796; 2 Restatement, Torts 1188, 1196, §§ 442 (b), 447 (a) (b); 38 Am. Jur. 713, Negligence, § 62. The affirmative form of this rule—that where the intervening act *is* reasonably foreseeable, the chain of proximate causation is not broken—has been applied in such cases as *Eckerson v. Ford's Prairie School Dist. No. 11*, 3 Wn. (2d) 475, 101 P. (2d) 345, and *Swanson v. Gilpin*, 25 Wn. (2d) 147, 169 P. (2d) 356.

Also tending to establish the existence of a superseding cause in this case is the fact that the intervening act or force here brought about a harm different in kind from that which would otherwise have resulted from respondents' negligence. See 2 Restatement, Torts 1188, § 442 (a).

The fact that this accident may have been caused by an intervening act of a child who could not be held guilty of contributory negligence, would not prevent the doctrine of superseding cause from attaching. *Barnes v. J. C. Penney Co.*, 190 Wash. 633, 70 P. (2d) 311.

It is to be observed that there is a clear distinction between this case and those cases where the mere lack of heat resulting from the landlord's breach of a covenant to heat premises has resulted in direct damage to personal property (*Smith v. Cruse,* 2 N. J. Misc. Rep. 350, 128 Atl. 377, affirmed on other ground, 101 N. J. L. 82, 128 Atl. 379), or in illness or death of the tenant or members of his family (*Glidden v. Goodfellow,* 124 Minn. 101, 144 N. W. 428; *Hansman v. Western Union Telegraph Co.,* 144 Minn. 56, 174 N. W. 434).

We conclude, on the basis of the facts pleaded, that respondents' breach of the implied covenant to heat the apartment was not a proximate or legal cause of the injury. Accordingly, with respect to this alleged ground of liability, as in the case of the allegation of liability based on the violation of an ordinance, the amended complaint fails to state a cause of action.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HILL, JJ., concur.