CHARLES MAGNOTTI *et al.,* Indiv. and as Adm'rs of the Estate of Kyle Magnotti, Deceased, Plaintiffs-Appellants, *v.* GOFFREY HUGHES, Defendant-Appellee.

Fifth District No. 77-162

Opinion filed March 2, 1978.

Edward J. Kionka, of Southern Illinois University, of Carbondale, and Freddy L. Shapiro, of Murphysboro, for appellants.

James B. Bleyer, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Charles and Helen Magnotti, individually and as administrators of the estate of their daughter, Kyle Magnotti, appeal from the judgment of the

Circuit Court of Jackson County dismissing their wrongful death action against Goffrey Hughes. The action was commenced to recover damages for the wrongful death of the deceased, an overnight social guest of defendant's lessee. She died in a fire of undetermined origin in a small house owned by Hughes and leased as a single unit dwelling to deceased's host. Plaintiffs base their allegation of the landlord's liability on the following theories: negligent breach of a statutory duty created by "An Act relating to the investigation and prevention of fire" (Ill. Rev. Stat. 1975, ch. 127½, par. 9); negligent breach of a general duty of due care; negligence in failing to maintain the structural parts of the premises in a reasonably safe condition; willful and wanton misconduct; and breach of an implied warranty of habitability. The complaint was dismissed on motion for failure to state a cause of action.

The complaint alleged that defendant leased the structure, described as one of three "plywood and two-by-four" vacation or hunting cabins, to one Diane Stringham, a student at Southern Illinois University at Carbondale, Illinois, on a month-to-month basis at a rental of $85. It was alleged and it likewise appears from photographs attached to the complaint, that each rental unit was connected to the one adjoining by a roof, forming an open breezeway at the front entrance of each unit. Plaintiffs' decedent was described as a holiday social guest of the tenant.

The complaint further alleged that just prior to 8 a.m. on November 24, 1973, a fire of undetermined origin started inside the structure; that the deceased awakened but that the fire spread quickly, particularly around the only exit, preventing her escape or rescue and that she lost her life in this tragic accident.

Count I of the complaint alleged that while the defendant-landlord owed the tenant and the deceased a duty to make the structure reasonably safe for habitation, he leased to the tenant a residence knowing the same was unreasonably dangerous to the occupants in the event of fire. Then followed more specific allegations of negligence; namely, that the plywood structure, being composed largely of glue, was unreasonably dangerous as it "had an unacceptably high flame spread rate"; that there was only one operable door or exit; that the defendant-landlord failed to furnish fire extinguishers; that defendant failed to insulate the structure and provide "double wall" construction so as to retard the rapid spread of fire; that defendant failed to equip the structure with a smoke alarm or other warning device knowing that the structure was unusually susceptible to fire and, therefore, particularly dangerous to sleeping occupants; and that because of these defects and dangerous conditions the structure was especially liable to fire and to cause injury in the event of fire, and that defendant kept and maintained inflammable conditions on the premises all in violation of section 9 (Ill. Rev. Stat. 1975, ch. 127½, par.

9). Count II was to recover funeral expenses based on the same allegations of negligence and violation of statutory duty.

Count III, repeating the same specific allegations alleged that the defendant landlord as owner had retained custody and control over "the permanent structural components of the structure in question, such as the walls, ceiling, floors, windows and door" and, therefore, had the duty to maintain these portions of the premises in a reasonably safe condition but failed to do so alleging specifically the same allegations common to all the counts.

Other counts, repeating these same specific factual allegations, alleged that defendant was guilty of wilful and wanton misconduct. Count VII was based on a breach of an alleged warranty of habitability. Count VIII was to recover funeral expenses based on a breach of the alleged warranty of habitability.

Defendant's motion to dismiss set forth that none of the matters alleged in the complaint contained allegations of latent defects existing at the time of leasing whch were known to defendant or defects or conditions which the deceased could not have discovered by reasonable examination of the premises.

We believe that the theories of recovery pleaded in this complaint, with two exceptions, are governed by our holding in *Dapkunas v. Cagle*, 42 Ill. App. 3d 644, 356 N.E.2d 575 (5th Dist. 1976), *appeal denied*, 65 Ill. 2d 577 (1977). No purpose will be served by a lengthy discussion of the issues of that case; appellants urge us to overrule *Dapkunas*, but we decline to do so.

■■ As we noted in *Dapkunas*, subject to few exceptions, a landlord is not liable for injuries to a tenant, or a tenant's invited guest, who has the same status as the tenant (*Fugate v. Sears, Roebuck & Co.*, 12 Ill. App. 3d 656, 299 N.E.2d 108 (1st Dist. 1973)), occurring on premises leased to a tenant and under his control.

■■ The Restatement (Second) of Torts §361 (1965) states that a lessor of land who retains under his control any part thereof which is necessary to the safe use of the part leased "is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee * * * for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control * * *." The usual example of the application of this rule is for injuries to the tenant or others caused by defects in common entrances or passageways in multiple unit dwellings. Plaintiff, under the authority of *Campbell v. Harrison*, 16 Ill. App. 3d 570, 306 N.E.2d 643 (1st Dist. 1973), would have us apply this rule here upon plaintiff's allegation that the defendant, as landlord, retained control over the structural parts of this house, such as the walls, ceiling, floor, windows and door. In the first place, the only defects alleged in these parts of the

structure was that they were composed of wood or plywood and were susceptible to destruction by fire. Secondly we do not believe *Campbell* can be read so broadly. There a tenant in a multiple-unit apartment building was injured when struck by plaster which fell from the living room ceiling which the landlord had refused to allow her to repair. The court held that a complaint, alleging these facts, stated a cause of action. Note that the complaint alleged that the lessors would not allow the tenant to make repairs to the defective plaster. Our attention is also directed to *Margan v. F. C. Pilgrim & Co.*, 32 Ill. App. 3d 563, 336 N.E.2d 374 (1st Dist. 1975). There an 83-year-old tenant was injured after falling upon seeing a mouse jump out of her oven in a rented apartment unit. She alleged that the landlord was negligent in allowing the incinerator and walls of the apartment building, over which he retained control, to become rodent infested. Plaintiff also pleaded a violation of a municipal ordinance relating to prohibiting rodent infestation. It is clear, however, that the incinerator system throughout the apartment building was a device or area for the common use of all the tenants over which the landlord could be said to have retained control. Another exception to the rule of nonliability is where the defect causing harm constitutes a nuisance. A rodent-infested apartment could well constitute a nuisance. See exceptions noted in *Thorson v. Aronson*, 122 Ill. App. 2d 156, 258 N.E.2d 33 (2d Dist. 1970).

■■ Not controlled by *Dapkunas*, and another exception to the rule of nonliability, is the allegation of the negligent breach of a statutory duty. One of the exceptions to the general rule that a landlord is not liable for injuries occurring on premises leased as an entire rental unit and under the tenant's control is that liability may exist where the injury results from the violation by the landlord of a statute or ordinance which prescribes a duty for the protection and safety of persons or property. The requirements for recovery are that the plaintiff be within the class of persons intended to be protected by the particular statute or ordinance and that the plaintiff's harm be of the kind against which the statute or ordinance in general was designed to protect. *Margan v. F. C. Pilgrim & Co.*, 32 Ill. App. 3d 563, 572, 336 N.E.2d 374, 381 (1st Dist. 1975); *Dapkunas v. Cagle*, 42 Ill. App. 3d 644, 647-48, 356 N.E.2d 575, 577 (5th Dist. 1976).

The statute involved in the present case is section 9 of "An Act relating to the investigation and prevention of fire" (Ill. Rev. Stat. 1975, ch. 127½, par. 9):

"No person, being the owner, occupant or lessee of any building or other structure which is so occupied or so situated as to endanger persons or property, shall permit such building or structure by reason of faulty construction, age, lack of proper repair, or any other cause *to become especially liable to fire*, or to

become liable to cause injury or damage by collapsing or otherwise. And no person, being the owner, occupant or lessee of any building, or structure, shall keep or maintain or allow to be kept or maintained on such premises, combustible or explosive material or inflammable conditions, which endanger the safety of said buildings or premises.

*The Department of Law Enforcement shall adopt and promulgate such reasonable rules as may be necessary to protect the public from the dangers specified in the preceding paragraph.* Such rules shall require the installation of necessary fire detection, alarm and protection devises in all public or private buildings which are used or available for use for the housing or assembling of more than 50 persons simultaneously. A copy of any rule, certified by the Director of Law Enforcement shall be received in evidence in all courts of this State with the same effect as the original.

All local officers charged with the duty of investigating fires shall enforce such rules, under the direction of the Department of Law Enforcement, except in those localities which have adopted fire prevention and safety standards equal to or higher than such rules adopted by the Department of Law Enforcement.

The Department of Law Enforcement, and the officers of cities, villages, towns and fire protection districts by this Act, charged with the duty of investigating fire, shall, under the direction of the Department of Law Enforcement, inspect and examine at reasonable hours, any premises, and the buildings and other structures thereon, and if, such dangerous condition or fire hazard is found to exist contrary to the rules herein referred to, or if a dangerous condition or fire hazard is found to exist as specified in the first paragraph of this Section, and the rules herein referred to are not applicable to such dangerous condition or fire hazard, shall order the dangerous condition removed or remedied, and shall so notify the owner, occupant or other person interested in the premises. Service of the notice upon the owner, occupant or other interested person shall be in person or by registered or certified mail.

This amendatory Act of 1975 is not a limit on any home rule unit." (Emphasis added.)

We shall assume that the deceased was within the class of persons intended to be protected by the statute; although, because of the somewhat peculiar structure of the statute, this is not free from doubt as the thrust of the Act (Ill. Rev. Stat. 1975, ch. 127½, par. 6 *et seq.*) is to require owners, occupants and lessees of buildings to comply with orders of the Department of Law Enforcement and other governmental agencies

concerned with fire safety to remedy conditions found to present fire hazards.

■■ Plaintiffs argue that this statute imposes a duty on the landlord not to allow a building to become "especially liable to fire." We disagree. We interpret the statute as imposing a duty, rather, on the Department of Law Enforcement to issue regulations in accord with the standards set out in the first paragraph of the statute. It is the regulations which would presumably specify in detail the obligations of an "owner, occupant or lessee." There is no suggestion of the violation, or even the existence, of any rule or regulation promulgated under the statute.

While plaintiffs have pleaded, in the language of the statute, that the owner kept or maintained or allowed to be kept or maintained on the premises material or inflammable conditions endangering the safety of the structure, no facts are pleaded to support this allegation other than the alleged flammable nature of the wooden materials of which the building was constructed. In fact, plaintiffs pleaded that the fire was of undetermined origin.

■■ The statute states that the Department of Law Enforcement shall adopt rules to protect the public from the dangers of fire noted in the first paragraph of the statute. Such rules presumably would be concerned with "faulty construction, age, lack of proper repair, or other cause," all factors which might result in a building or structure becoming "especially liable to fire." No such rules were pleaded; apparently none had been promulgated. In the absence of such rules we do not believe that a cause of action can be predicated upon such a general and undefined standard as *becoming especially liable to fire.* The defects in construction complained of, if defects, were patent and subject to discovery upon a reasonable inspection by the deceased. There were no allegations of fraudulent concealment of any latent defect. No "rule" is suggested which would require a lessor to provide fire extinguishers, smoke detectors, or other warning devices, or doubled-walled, insulated construction. While plaintiffs allege that the house had only one door or exit, it is apparent from a plat of the floor plan incorporated in the pleadings that another door was available but was not used by the lessee as it was in a part of the premises used as "the cat's room."

What we have said regarding the counts charging negligence is equally applicable to those counts that characterize the same conduct as wilful and wanton.

Accordingly, the judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.