SANDRA GILBREATH, Plaintiff-Appellant, *v.* J. H. GREENWALT, Defendant-Appellee.

Third District    No. 79-814

Opinion filed September 10, 1980.

James P. Kellstedt, of Peoria Heights, for appellant.

Bradley D. Dunham and Rebecca S. Riddell, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellant.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Sandra Gilbreath, filed this five-count action against defendant, J. H. Greenwalt, to recover damages for personal injuries sustained in a stairway fall occurring in a residence owned by defendant. This appeal is from the orders of the circuit court of Peoria County dismissing four counts of her complaint and granting summary judgment as to the fifth.

The dwelling in which plaintiff sustained her injuries was a single-family residence which defendant had leased to Lucky Hedgepath. Within the premises was an interior stairwell with a landing immediately outside the dwelling quarters on the second level. Three steps led to another landing on the ground level, where there was an exterior door leading outside the premises. Another series of steps led from the landing into the building's basement.

Lighting for the stairwell was provided by a single light bulb controlled by a switch located at the landing next to the exterior door. Plaintiff alleges that lack of a switch controlling the light at the top of the stairwell made it necessary for a person attempting to descend the stairwell from the second level to do so in "total darkness" when there was no natural lighting. The stairwell had no handrail, and it is further alleged that its carpeting was loose and moved underfoot.

On October 28, 1974, plaintiff was a guest of Hedgepath in defendant's dwelling. The stairwell fall in question occurred at approximately 10 p.m. that evening when she attempted to descend the stairwell from the living quarters on the second level while the stairwell light was not on. Other elements of the situation will be later considered, but in determining the propriety of the dismissal of four counts of plaintiff's complaint, we accept the foregoing properly pleaded facts as true and are concerned only with the questions of law presented by the pleadings. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538.

It has long been the law of this State that a lessor is liable for injuries which are sustained on premises, or portions thereof, retained in the lessor's control. (*Cf. Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877.) Correspondingly, a lessor is not generally liable for injuries resulting from defective conditions where premises are wholly demised. (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1197; *Magnotti v. Hughes* (1978), 57 Ill. App. 3d 1000, 373 N.E.2d 801; *Dupkunas v. Cagle* (1976), 42 Ill. App. 3d 644, 356 N.E.2d 575.) Exceptions to the latter rule of nonliability include situations (1) where a latent defect exists at the time of leasing, which defect is known or should have been known to the lessor in the exercise of reasonable care and which could not have been discovered upon a reasonable examination of the premises by the lessee; (2) where a lessor fraudulently conceals a known, dangerous condition; (3) where the defect causing the harm amounts to a nuisance; (4) where the lessor prom-

ises the lessee to repair the premises at the time of the leasing (*Dapkunas v. Cagle; Thorson v. Aronson* (1970), 122 Ill. App. 2d 156, 258 N.E.2d 33; *Woods v. Lawndale Enterprises, Inc* (1939), 302 Ill. App. 570, 24 N.E.2d 193); and (5) where the injury results from the lessor's violation of a statute or ordinance which prescribes a duty for the protection and safety of a class to which a lessee belongs and the harm is of the kind against which the statute or ordinance is designed to protect (*Magnotti v. Hughes; Dapkunas v. Cagle; Mangan v. F. C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374). On appeal plaintiff maintains that the premises doctrine of Illinois is anachronistic and that several counts of the subject complaint fall within the above enumerated exceptions to the general rule of lesser nonliability where premises are wholly demised.

The first issue presented for our review is whether four counts of the complaint at bar were properly dismissed. Count I of the complaint alleges that the fall in question resulted from defendant's negligent failure to properly maintain the premises or to warn plaintiff of the defective conditions of the stairway. Count II is phrased in similar terms but characterizes defendant's omissions as wilful and wanton.

■■ It is fundamental that there can be no recovery in tort for negligence unless a defendant has breached a duty owed to a plaintiff. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39.) Similarly, in order to state a cause of action for wilful and wanton misconduct, facts must be alleged from which the law would raise a duty. (*Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 394 N.E.2d 452; *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80; *Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 347 N.E.2d 396.) As we have previously noted, a lessor is not liable for injuries to a tenant or a tenant's invited guest, who shares his status (*Magnotti v. Hughes* (1978), 57 Ill. App. 3d 1000, 373 N.E.2d 801; *Roseman v. Wilde* (1969), 106 Ill. App. 2d 93, 245 N.E.2d 644; *Hendricks v. Socony Mobil Oil Co.* (1963), 45 Ill. App. 2d 44, 195 N.E.2d 1), occurring on premises wholly leased to a lessee and under his control, unless the theory of recovery falls within a recognized exception to that general rule. A lessor's duty to exercise reasonable care to maintain portions of a premise retained under his control in a reasonably safe condition (*e.g., Murphy v. Illinois State Trust Co.* (1940), 375 Ill. 310, 31 N.E.2d 305) cannot arise where no portion of a dwelling is retained in the lessor's control. Thus, under current law, no duty was here breached by defendant's alleged failures and omissions, and the allegations of the two counts do not fall within an exception to the general rule. As the supreme court has recently held that "conditions have not so changed that the common law should be rewritten" in considering the tripartite classification of the premises doctrine dealing with entrants upon land (*Pashinian v. Haritonoff* (1980), 81 Ill. 2d 377, 381, 410 N.E.2d 21, 22), we deem it

inappropriate for an intermediate court of review to initiate such a change in the common law applicable in the case at bar. We therefore find the trial court properly dismissed counts I and II of the complaint.

Count III of the complaint alleges that the fall in question resulted from defendant's negligent or wilful and wanton violation of three sections of the Housing Code of the City of Peoria (Municipal Code of Peoria, ch. 16, par. 16—100 *et seq.*), a recognized exception to the general rule of lessor nonliability. The three sections provide as follows:

> "Sec. 16—104.5 Each hallway and stairway in a multiple dwelling shall be lighted at all times by natural or electric light, so as to provide in all parts thereof a least five foot candles of light at the tread or floor level. Each hallway and stairway in dwellings containing not more than two dwelling units may have instead of full-time electric lighting, conveniently located light switches controlling the same amount of electric light and which may be turned on when needed by persons using the hallway and stairway."

> "Sec. 16—107.11 Convenience switches or equivalent devices for turning on one light in each room or passageway shall be located so as to permit the area ahead to be lighted."

> "Sec. 16—119 CRIMINAL HOUSING MANAGEMENT

> Criminal housing management is hereby prohibited. A person commits criminal housing management when, having personal management or control of residential real estate whether as a legal or equitable owner of the residential real estate or as a managing agent or otherwise, he knowingly permits, by his gross carelessness or neglect, the physical condition or facilities of the residential real estate to become or remain so deteriorated that the health and safety of an inhabitant is endangered.

> A person convicted of criminal housing management shall be fined not less than two hundred dollars ($200.00) nor more than five hundred dollars ($500.00)."

Section 16—104.5 is, by its express language, limited to "[e]ach hallway and stairway in a multiple dwelling." Section 16—102 of the Code defines a multiple dwelling as a "dwelling containing more than two dwelling units and/or rooming units.", rendering section 16—104.5 inapplicable to the subject single-family residence. Section 16—107.11 refers to light switches to turn on lights in each "room or passageway" to illuminate the area ahead. While a stairwell might possibly be considered a passageway, a comparison of section 16—107.11 with other sections of the Code indicates otherwise. In sections 16—104.5 and 16—107.7, references are made to "stairway[s]" and "steps containing three risers or more", rather than to passageways. Additionally section 16—107.11 refers to the "area ahead"

while section 16—104.5 refers to the "tread or floor level". Thus section 16—107.11 applies to the interior of the house in going from room to room rather than a stairwell. Section 16—119 is a general penal section couched in language to prevent deterioration of real estate which would endanger the "health and safety of an inhabitant." As the preceding pleaded sections of the Code fail to establish any duty which has been violated by defendant, and there is no suggestion of the violation of other sections of the Code, it would be an anomaly to nonetheless find the alleged conditions violated the Code's penal section. We therefore find the trial court correctly dismissed count III of plaintiff's complaint.

■■ Count V of the complaint characterizes the pleaded conditions of the dwelling as constituting a nuisance, another recognized exception to the general rule. When a nuisance exists on the premises at the inception of a lease, a lessor may be liable to a lessee where the nuisance resulted from a latent defect and the lessor is guilty of fraud, actual concealment or deceit. (*Lazarus v. Parmly* (1904), 113 Ill. App. 624.) In the case at bar, the location of the light switch and lack of a handrail were clearly evident at the time of leasing. The loose carpeting, though, may have appeared after the lease was executed; however, we do not find this to be the kind of condition to which the exception is addressed. A rat-infested apartment could well constitute a nuisance (see *Magnotti v. Hughes* (1978), 57 Ill. App. 3d 1000, 1004, 373 N.E.2d 801, 803), while a dilapidated step which crumbled does not (see *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 569, 396 N.E.2d 1197, 1202). Therefore we find the trial court properly dismissed count V of the complaint.

Having found that the trial court properly dismissed the foregoing counts of plaintiff's complaint, we now consider whether defendant's motion for summary judgment as to count IV was properly granted. Count IV alleges that the fall in question occurred as the result of defendant's breach of an oral agreement to install a light switch at the top of the stairway. Summary judgment was properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that defendant was entitled to a judgment as a matter of law. Ill. Rev. Stat. 1977, ch. 110, par. 57(3).

The subject oral agreement was alleged to have been entered into at the time Hedgepath leased the residence from defendant. Hedgepath remembered two conversations with defendant prior to assuming occupancy of the residence. The first was a telephone conversation occurring approximately one week before moving into the premises. During his discovery deposition, Hedgepath explained:

"Q. In that telephone conversation what did you do, just get the address of the place so you could go and look at it?

A. I got the address, asked if I could talk to him later on, and we made an appointment, I don't know how much later.

Q. Did you talk about anything else in that conversation?

A. Well, just general, that he would do the up-keep and I would pay the rent.

Q. Anything specific said about the up-keep, what kind of up-keep are you talking about, general maintenance work?

A. Right.

Q. In other words, if your roof fell down he would come and fix that, is that what you are saying?

A. Yes, anything that went wrong.

Q. He would come and take care of it?

A. Take care of it.

Q. Anything else you remember from that conversation on the telephone?

A. No, only that I went there to meet him, yes, I met him there.

Q. You don't remember anything else about your conversation on the telephone?

A. No."

The second conversation occurred on the premises a few days later. Hedgepath explained:

"Q. What did you do on this second visit with Mr. Greenwalt, did you go through the premises?

A. Yes.

Q. Did you talk any more about renting the place at that time?

A. I think we made the agreement at that time.

Q. Now, you say you made the agreement, you mean how much you were going to pay per month?

A. Yes.

Q. That was the one hundred to a hundred and fifty a month?

A. Somewhere, I don't remember exactly.

Q. Did you and Mr. Greenwalt talk about anything else on this second conversation at the premises?

A. Well, nothing that I remember."

Several months later, defendant came to the premises to repair the back door. Hedgepath explained:

"Q. Was this after you moved in, Mr. Greenwalt came over and fixed that door?

A. Right.

Q. Was that the first time you mentioned to him about doing something else to the back stairway?

A. Yes, because you couldn't see it, even in the day time."

■■ A lessor's promise to repair made after the execution of a lease is a mere *nudum pactum* and is thus unenforceable against him. (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197; *Yuan Kane Ing v. Levy* (1975), 26 Ill. App. 3d 889, 326 N.E.2d 51; *Forshey v. Johnston* (1971), 132 Ill. App. 2d 1106, 271 N.E.2d 81.) While it is unclear if defendant at any time agreed to install the additional switch, it is clear that no agreement was even discussed until several months after the lease was executed. Hedgepath further admitted that he never paid defendant any sum of money other than his rent payments, and plaintiff admitted she had no discussions of any nature with defendant until after the lease was executed. We therefore find the trial court correctly entered summary judgment as there is no issue of a material fact, and defendant is entitled to a judgment in his favor.

Accordingly, the orders of the circuit court of Peoria County are affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.