Charles ENIS and Jacqueline Enis, minors by Sarah Enis, their mother and next friend, Plaintiffs–Appellants,

v.

BA–CALL BUILDING CORPORATION, a corporation, Defendant–Appellee.

No. 79–2310.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1980.

Decided Sept. 22, 1980.

Barry M. Woldman, Chicago, Ill., for plaintiffs–appellants.

Judith E. Fors, Chicago, Ill., for defendant–appellee.

Before FAIRCHILD, Chief Judge, and PELL and WOOD, Circuit Judges.

FAIRCHILD, Chief Judge.

In this diversity action controlled by Illinois law, plaintiffs appeal from an order of the district court dismissing their tort action for failure to state a claim upon which relief could be granted. We reverse and remand for further proceedings.

There is no dispute about the facts involved in this action. Defendant Ba–Call Building Corporation (Ba–Call), an Illinois corporation, owned a multiple dwelling unit in Maywood, Illinois. Plaintiffs Charles Enis and Jacqueline Enis lived with their mother Sarah Enis in that building in October and November of 1976. Sarah Enis had lived in the building for many years and was current in her rent payments as of November, 1976. Plaintiffs now live in Alabama. Ba–Call was required by local ordinance [1] to provide heat at specified times and at specified minimum temperatures from October 1 of each year to May 1 of the succeeding year. Counsel for Ba–Call conceded at oral argument that Ba–Call was providing no heat to the Enis apartment in November, 1976, and was in violation of the Maywood ordinance. In order to provide heat in the apartment, Sarah Enis made use of an alternative heating method, constantly keeping water boiling in a turkey kettle on her kitchen stove. Defendant concedes that it knew that tenants in unheated apartments would utilize various alternative heating methods such as the one employed by Sarah Enis, the use of space heaters, or keeping the stove hot and open for long periods of time. Boiling water from the turkey kettle spilled on the two Enis children and injured them. There is no indication in the pleadings or at oral argument precisely how this accident occurred.

Plaintiffs filed this diversity action, claiming that defendant's failure to provide heat breached a duty owed to plaintiffs and that the plaintiffs were injured as a proximate result of that breach; the complaint sought damages on theories of negligence and wilful and wanton conduct. The dis-

1. Village of Maywood, Illinois, Ordinance sec. 7.77 provides:

Sec. 7.77 Heating of apartment houses, factories and work shops.

It shall be the duty of every person owning or controlling any apartment house, in which the heat is furnished from a heating plant used in common for the purpose of heating the various rooms and apartments therein and such heating plant is under the control or supervision of such owner or person in control of such building, to furnish heat to such rooms and apartments from the first day of October of each year to the first day of May of the succeeding year, so that the occupants thereof may secure, without such undue restrictions of ventilation as to interfere with proper sanitary conditions, a minimum temperature of sixty degrees Fahrenheit at 6:30 A.M., sixty–eight degrees at 7:30 A.M. and seventy–two degrees at 8:30 A.M. and thereafter until 10:30 P.M., averaged throughout the apartment.

trict court granted the defendant's motion for judgment on the pleadings for failure to state a cause of action. It reached this result on two rationales. First, it held that the Maywood ordinance was designed to protect renters of multiple dwellings against discomfort and illness caused by maintenance of subnormal temperatures; because the injury complained of involved burns, that injury was not of the type against which the ordinance was designed and therefore violation of the ordinance could not be a source of liability in this action. Second, the court found that an intervening act broke the direct causal chain between the failure to provide heat and the injuries, so that there was no proximate cause required for recovery. Because the court indicated that "[i]t might have been foreseeable to the defendant that the plaintiffs would use an alternative means to heat their apartment," *Enis v. Ba–Call*, No. 78 C 3480 (N.D.Ill., June 15, 1979), it is not clear whether by intervening cause the court meant the use of the alternative heating method or some unknown act which caused the boiling water to spill from the turkey kettle. Plaintiffs' motion to set aside the judgment and for leave to file an amended complaint was denied. Plaintiffs appeal from these two orders of the district court.

■ In Illinois as a general rule landlords are not liable for injuries on premises leased to and under the control of a tenant. *Shehy v. Bober*, 78 Ill.App.3d 1061, 1066, 34 Ill.Dec. 405, 409, 398 N.E.2d 80, 84 (1979), citing *Dapkunas v. Cagle*, 42 Ill.App.3d 644, 647, 1 Ill.Dec. 387, 356 N.E.2d 575, 577 (1976); *Thorson v. Aronson*, 122 Ill.App.2d

156, 258 N.E.2d 33 (1970). The rule is, however, subject to several exceptions. *Dapkunas v. Cagle*, 42 Ill.App.3d 644, 647, 1 Ill.Dec. 387, 389, 356 N.E.2d 575, 577 (1976). Pertinent to the present case is the exception discussed in *Mangan v. F.C. Pilgrim & Co.*, 32 Ill.App.3d 563, 336 N.E.2d 374 (1975): "The violation of a statute or ordinance prescribing a duty for the protection and safety of persons or property may constitute negligence such as gives rise to a cause of action on behalf of a person who suffers injury or damage by reason thereof . . . ." *Id.* at 569, 336 N.E.2d at 379.

In *Mangan*, plaintiff was an elderly woman who sued her landlord for damages arising from her fall after being scared by a mouse in her oven. The landlord was found to be responsible for the presence of the rodent because of failure by the landlord to rid the building of rodents, as required by a local ordinance. The ordinance was held to create a duty on the part of the landlord whose acts constituted breach of that duty. After finding that the plaintiff was intended to be protected by the ordinance, the court inquired whether the injury suffered was of the kind which the ordinance was enacted to prevent. It concluded that the presence of rodents in a building gives rise to numerous foreseeable dangers including the injury suffered by plaintiff and that therefore the violation of the ordinance proximately caused the injury. *Id.* at 569, 572, 336 N.E.2d at 379, 381.[2]

■ It is obvious that the landlord breached a duty to the tenants in failing to provide heat as required by the ordinance. The district court correctly indicated that

---

**2.** Appellee attempts to distinguish *Mangan* from the present case, arguing that *Mangan* presents a much clearer line of causation. We are not persuaded that the differences are significant. *Mangan* found the lower court judgment for plaintiff appropriate on two rationales. First was that the landlord's duty to maintain the areas of the building under his control free from rodents made the landlord liable for plaintiff's injury despite the fact that the injury took place in an area under her control. 32 Ill.App.3d 563, 569, 336 N.E.2d 374, 379 (1975). Second was that the landlord's duty under the ordinance to prevent rodent

infestation of the building was breached and that the injury to plaintiff upon falling after being frightened by a mouse in her oven was a reasonably foreseeable consequence of that breach. Subject to other facts which may be brought out at trial, nothing in the record of the present case convinces us that the line of causation is not as clear as in *Mangan*. In the present case, the chain of causation is that violation of the ordinance breached the landlord's duty to the tenants, causing plaintiff to use alternative heating methods which somehow led to the injury to plaintiffs.

"for liability to exist, the plaintiff must be within the class of persons to be protected and the harm must be of a kind against which the statute was intended to protect." *Enis v. Ba–Call*, No. 78 C 3480 (N.D.Ill., June 15, 1979), *citing Magnotti v. Hughes*, 57 Ill.App.3d 1000, 1004, 15 Ill.Dec. 455, 458, 373 N.E.2d 801, 804 (1978); *Mangan v. F.C. Pilgrim & Co.*, 32 Ill.App.3d 563, 572, 336 N.E.2d 374, 381 (1975). *Mangan* is strong authority for finding that in the present case the danger of injury from use of alternative heating methods was one of the harms against which the statute was intended to protect. In any event, Illinois courts treat this question as an issue of proximate cause which should be left for the trier of facts:

> [I]n personal injury cases where liability is grounded in a statute or ordinance violation, questions of whether a plaintiff comes within the class of persons intended to be protected by the statute or ordinance and whether the injury is of the kind generally intended to be prevented have been dealt with in terms of proximate cause and, as such, are subject to the determinations of the triers of fact. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill.2d 126, 130, 15 Ill.Dec. 768, 374 N.E.2d 203; *Ney v. Yellow Cab Co.* (1954), 2 Ill.2d 74, 84, 117 N.E.2d 74; *Mangan*, 32 Ill.App.3d 563, 569–72, 336 N.E.2d 374).

*Shehy v. Bober*, 78 Ill.App.3d 1061, 1067, 34 Ill.Dec. 405, 410, 398 N.E.2d 80, 85 (1979). Illinois courts have held that where an injury could be reasonably foreseen from a negligent act or omission, it is not necessary that the precise injury which occurred should have been foreseen. *Blue v. St. Clair Country Club*, 7 Ill.2d 359, 364, 131 N.E.2d 31, 34 (1955); *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74 (1954).

 Violation of a public safety statute is *prima facie* evidence of negligence and such violation is actionable when there is shown to be a direct proximate causal relation between the violation and the injury. *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 78–79, 117 N.E.2d 74, 78 (1954); *Ding v. Kraemer*, 59 Ill.App.3d 1042, 1044, 17 Ill.

Dec. 267, 269, 376 N.E.2d 266, 268 (1978). As this court observed in *Wright v. General Motors Corp.*, 479 F.2d 52 (7th Cir. 1973):

> Under Illinois law, before an intervening force will relieve a defendant from liability for his wrongful conduct, the intervening force must itself be outside of the range of reasonable anticipation as a consequence of the defendants' wrongful conduct . . . . Where the question of whether the intervening force or event was a reasonable foreseeable consequence of the defendants' conduct is one over which reasonable men might differ, the issue of proximate cause . . . is for the jury to decide under appropriate instructions.

*Id.* at 53. The district court in this action decided that there was no proximate cause shown in this action because of "an independent action on the part of the plaintiff's mother." As indicated previously, we cannot be certain what event the district court was referring to. Nevertheless, it appears to us that neither the foreseeability of injury from use of alternative means of heating nor the events occurring immediately before the spilling of the boiling water on the plaintiffs are events so clear that these issues should have been taken from the province of the trier of fact.

Accordingly, the orders appealed from are Reversed and Remanded.

PELL, Circuit Judge, dissenting.

Probably very few, if any, students who have graduated from American law schools during the past fifty years have not been made aware of the landmark case of *Palsgraf v. Long Island Railroad Company*, 248 N.Y. 339, 162 N.E. 99 (1928). In that case, the then Chief Judge of the Court of Appeals in New York, Benjamin Cardozo, wrote: "One who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person." 162 N.E. at 101. Graduates of American law schools of the last decade or so would necessarily have been aware that these words, which seemed when writ-

ten to summarize accurately the American jurisprudential theories of no liability without fault, have of recent years been subject to substantial erosion. I decline to believe, however, that the law of Illinois has reached a point of rendering the words quoted above meaningless and without any legal significance; but if the majority opinion in the present case is deemed correctly to state the law of Illinois, it appears to me the result that has been reached is a virtual state of absolute liability irrespective of traditional concepts of statutorily–based civil liability and proximate cause. I therefore respectfully dissent.

The simple facts in this case are that the Village of Maywood had adopted an ordinance requiring a person owning an apartment house to provide certain specified minimal heat, that the plaintiffs' mother occupied an apartment owned by the defendant, that the defendant failed to provide the minimal specified heat, that the plaintiffs' mother kept water boiling in a turkey kettle on her kitchen stove to provide heat, and that somehow the boiling water spilled on the plaintiffs and injured them.

At the outset, I do not believe that the harm suffered was of the kind which the statute was intended, in general, to prevent. Prosser on Torts, ch. 5, § 36 at 195 *et seq.* (4th ed. 1971). Prosser, at 197, indicates the better view is that the accident need only be included within the same general risk or class of risks, at which the statute is directed. I must concede that doubts were thrown on my position on the present phase of the case by the subsequent statement in the Prosser text that, "[t]here are, however, occasional cases which have gone to an extreme, and apparently have included all risks which would occur to anyone as possible, following the violation." The supporting footnote cited *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 107 N.E.2d 74 (1954). That case involved the violation of a statute prohibiting the leaving of a motor vehicle unattended without the ignition being locked. A thief had stolen an unattended taxi cab and while in flight ran into plaintiff's vehicle causing property damage.

The Supreme Court of Illinois held that the statute was a public safety measure and that the intervening force of the thief was within the range of reasonable anticipation and probability. While personally I might have regarded the dissenting opinion as stating the better view of the law, that is not my province in the present case but it simply is to determine what I think the law of the state of Illinois is. At least, in *Ney* the majority opinion analyzed at some length the incidence of serious havoc caused by runaway thieves or irresponsible juveniles in stolen or borrowed motor vehicles and the recognition of the probable danger resulting in injury consequent to permitting a motor vehicle to become easily available to an unauthorized person through violation of the statute in question. In other words, what happened there was what could easily have been anticipated as happening and something that the legislature wanted to put a stop to by making it a violation of the law to leave vehicles unattended with the ignition keys therein. The rationale apparently was that a thief seizing the opportunity presented him by the situation would move the car into traffic and being a thief would move it more speedily, and perhaps less carefully, than if he were not fleeing or if it were his own car, with the resultant likelihood of damage to others.

In *Mangan v. F.C. Pilgrim & Co.*, 32 Ill.App.3d 563, 336 N.E.2d 374 (1975), the case on which the majority opinion principally relies, which involved violation of some village ordinances prohibiting rodent infestation of dwelling units, the Illinois court, rather summarily and without the analysis which appeared in *Ney*, opined that, in determining whether the type of harm suffered by the plaintiff was intended to be protected against by the ordinance, the presence of rodents in a dwelling gives rise to an array of foreseeable dangers. Under the circumstances of that case presumably this meant one of the foreseeable dangers was that by allowing mice to run at large it was foreseeable that one would somehow get into an oven and would later jump out and frighten a person who would then fall and injure herself.

Some place during the course of that litigation it might seem that the court would have given some recognition to the fact that eventually every homeowner, even in metropolitan areas, despite all efforts, has had periodic forays of mice. In any event, the Illinois Appellate Court gave no more analysis to the preliminary question of whether this was the type of harm which was intended to be protected against than to say that abatement of the general threat of unsanitary and unsafe conditions caused by the presence of such creatures as mice was no doubt the essential consideration of the Village in enacting the ordinance. The court very simply said that the "harm suffered here can validly be considered of a kind which the ordinance was intended, in general, to prevent," citing Prosser. *Mangan, supra*, 336 N.E.2d at 381. In other words, the court seems to be saying that whenever a mouse, who has gotten in the house assertedly because of the owner's noncompliance with the ordinance, is somehow associated with a personal injury there is a case for jury consideration. This has nothing to do with the purpose of the statute of abating unsanitary and unsafe conditions. It in essence is absolute liability which I do not believe is the law of Illinois.

Both on the present point and the subsequently discussed proximate causation issue, the case that is factually most similar to the case under consideration is that of *Cook v. Seidenverg*, 36 Wash.2d 256, 217 P.2d 799 (1950). In that case, a city ordinance required specified minimal heats. The heats were not provided. The plaintiff and other tenants of the building provided themselves with movable electric plug–in heaters. The defendants were familiar with the type and location of the electric heater being used in the plaintiff's apartment. One morning, as this electric heater was being used to supply heat, which by the ordinance the defendants were required to furnish, a child's nightgown became ignited, resulting in serious and permanent injuries. The unanimous opinion of the Washington Supreme Court was written by Justice Frederick Hamley who later served a long and distinguished career in the Ninth Circuit of the United States Court of Appeals. The court's opinion pointed out that the purpose of the enactment was to protect tenants from discomfort and illness due to the maintenance of subnormal temperatures in apartment buildings where central heating is provided and it is under the sole control of the landlord. That, of course, is the situation here and there would be no problem if the plaintiffs were seeking damages because they contracted pneumonia as a result of the subminimal temperatures. That was not the case here nor was it the case in *Cook*, and I am of the belief as expressed by Justice Hamley that one of the purposes of the ordinance was not to obviate the necessity of the tenants using auxiliary heating devices, here boiling water, because of any supposed danger inherent in the use of such appliances. The *Cook* court following the Restatement of Torts pointed out that the ordinance was not intended to protect an interest of the appellant from the particular hazard of the use of space heaters. I do not take the position that the defendants in the case before this court had to anticipate that any particular form of auxiliary heat might be used. Indeed, the defendants who did not comply with the minimal heating requirements could well anticipate that auxiliary heating would be used. But the purpose of the ordinance was not to make liable a landlord because a tenant used and suffered injuries as a result of a device such as boiling water or electrical heating appliances which are not inherently dangerous.

It should be also noted that in the *Cook* case under Washington law the violation of the ordinance was negligence as a matter of law whereas in Illinois the violation is merely evidence of negligence. I also note that Justice Hamley relied extensively on both points on the Restatement of Torts which the Illinois courts also generally follow. *See Mangan, supra*, 336 N.E.2d at 381.

Here it seems to me plain that the ordinance was to protect a particular class of persons, *i. e.*, tenants, against the more or less narrowly restricted type of hazard, *i. e.*, lack of specified heat. As the Restatement

(Second) of Torts, § 286 at 28 (1965) states: "If so, the violation of the enactment will not be negligence unless the harm which results to another is caused by his exposure to the hazard from which it was the purpose of the enactment to protect him." In other words, the children were to be protected from the hazard of illness or discomfort from temperatures under those specified in the ordinance. The ordinance, as the court pointed out in *Cook*, was not enacted with reference to any hazard involved in the securing of auxiliary heat, at least in every day usage forms and the injuries therefore were not such as the ordinance was intended to prevent. 217 P.2d at 802.

Following *Cook* into the matter of proximate causation, again that case relies upon the Restatement as do the Illinois courts. Looking at what the court said in *Cook* but substituting for a heater reference that of a common cooking vessel containing boiling liquid, it appears clear to me that there was no proximate causation, if it is necessary to reach that question. The Washington Supreme Court stated the matter as follows:

> From the facts alleged, it is plain to us that the accident which caused appellant's injuries was not part of a natural and continuous sequence beginning with respondents' failure to provide heat. It was, instead, the result of an intervening act or force constituting a new cause independent of respondents' act of negligence.
>
> By "intervening act or force" we are not referring to the mere act of the mother in obtaining and utilizing a portable electric heater. That act may well be regarded as part of a natural and continuous sequence resulting from respondents' failure to provide heat. But we know that there must have been some additional and further act or force in operation here, since the normal use of such electrical appliances rarely results in accidents of this kind. The pleadings are silent as to exactly how the accident occurred, and so we are not informed as to the precise nature of the intervening act or force. But we do know that it must

have been due either to the negligence of the mother in placing the heater in a position of danger, or in knowingly using a defective heater, or in failing to supervise the child's use of the heater or the act of the child, independent of any negligence, in coming in too close proximity to the heater; or a latent defect in the heater which caused the child's clothes to ignite; or some other intervening circumstance of like nature.

> In our opinion, any of these circumstances must, under the facts of this case, be held to constitute a superseding cause of harm within the meaning of that term as defined above. Instances of negligence in the use of such portable heaters with resulting injuries of the kind suffered here, are relatively infrequent. Cases where the use of such heaters results in such injuries independent of any act of negligence are even more rare. Accordingly, respondents are not chargeable with foreseeing that, if they failed to provide adequate heat, injuries resulting from the negligence of tenants in using such heaters, or resulting from other forces independent of negligence, would occur.

> Where such intervening act or force is not reasonably foreseeable, it must be regarded as a superseding cause negating the claim of proximate or legal cause.

*Cook, supra*, 217 P.2d at 803.

On ultimate analysis, this is not as in the *Ney* case a situation where it was held foreseeable that the result of a defendant violating a statute or ordinance would be the commission of a crime resulting in injury to and liability to a third person. Here the situation permits a foreseeability that people will use small space heaters or, indeed, will put a kettle on the stove to provide heat or will leave the oven door open. All of these procedures, however, are normal procedures. That is particularly true of the boiling kettle. One of the very purposes of a cooking stove is to heat foods and liquids to the point that germs are killed. Also, foods and liquids are similarly heated to make them more edible. Day in

and day out, cooking vessels are found on kitchen stoves with heated contents of sufficient temperature to produce injury if applied to the skin of a human. While accidents can, and do, happen in most any situation that could be conceived, this does not mean they are foreseeable. No doubt at many times in every home there have been kettles with boiling water, some open and some covered, and if the defendant in the present case can be held to have foreseen that the children would be injured by a normal process of any kitchen, it would seem the manufacturer of such cooking vessels is also similarly liable if someone is injured as the children here were.

Unless we are prepared to make a violator of a statute liable for any risk which would occur to anyone following the violation, which I don't think the Illinois courts have really done or are prepared to do, then I think the district court in the present case should be affirmed. In saying this I am not unmindful of the emphasis that the Illinois decisions have put upon proximate cause being ordinarily a question of fact for the jury. Unless the courts are willing to abdicate their responsibility, however, there are situations in which under the law these are no longer questions of fact but become questions of law. The courts of Illinois have so held. *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665, 675 (1942).

Finally, I note two other aspects of the present type of litigation. First, it is often said in cases that where an injury could be reasonably foreseen from a negligent act or omission, it is not necessary that the precise injury which occurred should have been foreseen. I do not quarrel with this. It is hornbook law. I do say that an injury from the use of a cooking vessel on a stove in the functional manner for which it was designed does not present a case where an injury could be reasonably foreseen.

Secondly, I note the statement that the Illinois courts have treated the matter of what the statute was intended to protect as an issue of proximate cause which should be left for the trier of facts. *See, e. g., Shehy v. Bober*, 78 Ill.App.3d 1061, 1067, 34 Ill.Dec.

405, 410, 398 N.E.2d 80, 85 (1979). Proximate cause may be intertwined in the determination of the applicability of the statute or ordinance in a particular case. Nevertheless, a first step is that of construing, as was done in *Ney*, the enactment to determine its intent in giving protection. *See* Restatement (Second) Torts, § 286, Comment on Clauses (c) and (d) at 28 (1965). This construction of the statute remains, as it must, a question of law. There are many regulatory ordinances dealing with apartment houses which no one would contend had any application to the present case even though an injury occurred while the landlord was in violation. That they do not is because the court would first determine the intent of the enactment insofar as determining what interest was to be protected from what harm. In the present case, the construction of the ordinance leaves no room, in my opinion, for a factual question.