ELVIRA MORENO, Special Adm'r of the Estate of German Parades, a/k/a Miguel Parades, Plaintiff-Appellant, v. BALMORAL RACING CLUB, INC., Defendant-Appellee.

Third District   No. 3—90—0878

Opinion filed August 9, 1991.

Cooney & Conway, of Chicago (Timothy R. Ocasek, of counsel), for appellant.

Thomas J. Branit, of Moore & Maisel, of Chicago (Travis Maisel, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

This case comes on appeal from the trial court's order dismissing plaintiff's third amended complaint with prejudice. Plaintiff appeals pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Plaintiff's third amended complaint alleges that on October 28, 1987, defendant owned, operated, maintained, managed and controlled apartments located at its racetrack, one of which was the lawful residence of plaintiff's decedent, German Parades. The temperature on October 28, 1987, was at or below freezing, and decedent's apartment was without heat. Defendant knew or should have known that the heating system was not working and that this would result in the use of alternative heat sources. To provide heat in his apartment, decedent placed and operated a charcoal grill in his room which caused him to die of carbon monoxide poisoning. Failure of defendant to provide heat was a violation of a local ordinance.

Defendant moved to dismiss the third amended complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.) Plaintiff responded by asking for leave to amend by replacing allegations of violation of a local Crete, Illinois, ordinance with allegations of violation of a Will County ordinance. The trial court denied this request on

the basis that neither ordinance was applicable to the facts as alleged and granted defendant's respective motions to dismiss.

The issue to be decided on appeal is whether the trial court erred as a matter of law in granting defendant's motions to dismiss under sections 2—615 and 2—619 of the Illinois Code of Civil Procedure. We will first consider the trial court's ruling pursuant to section 2—615.

Generally, a landlord is not liable for injuries sustained by a tenant as a result of a defective condition within the four corners of the demised premises. (*Lamkin v. Towner* (1990), 138 Ill. 2d 510, 563 N.E.2d 449.) There are, however, five notable exceptions to this rule: (1) a latent defect existed at the time of the leasing which lessor should have known about; (2) a fraudulent concealment by a landlord of a dangerous condition; (3) the defect causing the harm amounts to a nuisance; (4) the landlord makes a promise to repair a condition at the time of leasing; and (5) the landlord violates a statutory requirement of which tenant is in the class designed to be protected and the resulting harm is reasonably foreseeable. (*Gilbreath v. Greenwalt* (1980), 88 Ill. App. 3d 308, 410 N.E.2d 529.) Plaintiff in this case argues on appeal that defendant violated either a Crete city ordinance or a Will County ordinance by failing to maintain heating facilities in a safe and good working condition. Plaintiff also mentions that the third amended complaint states causes of action under the nuisance and latent defect exceptions as well. These points, however, are only mentioned, not argued, and therefore we will not address them on appeal.

Defendant's section 2—619 motion was based primarily upon its assertion that the racing grounds were not located within the Crete city limits and, therefore, the Crete city ordinance had no application. In granting defendant's motion on this point the trial court compared the Will County ordinance and the Crete city ordinance and found them to be substantially similar. That being the case, the trial court then considered whether plaintiff could have stated a proper cause of action had the Will County ordinance been properly alleged. Determining that no cause of action could be stated under either ordinance, the trial court granted both of defendant's respective motions to dismiss and denied plaintiff's motion to amend. We affirm.

■ To bring a cause of action against a landlord for tort liability based upon the alleged violation of an ordinance, the plaintiff must be within the class of persons which the ordinance is intended to protect and the resulting harm must be the kind which the ordinance was intended to prevent. (*Gilbreath*, 88 Ill. App. 3d 308, 410 N.E.2d 539.) There is no disagreement that plaintiff's decedent was within the

class of persons designed to be protected by the respective ordinances. The primary question is whether the use of a charcoal burning grill as an alternative heat source, and the resulting death, was the kind of harm designed to be prevented by the ordinance.

Defendant concedes that there was no heat in the apartment and, therefore, it breached its statutorily prescribed duty to provide heat in the decedent's apartment. "The violation of the statute is *prima facie* evidence of negligence \*\*\*. [Citations.]" But "[t]his in itself creates no liability. The injury must have a direct and proximate connection with the violation of the statute before liability will be held to exist." (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 78-79.) Courts in Illinois have considered this point under the proximate cause rationale of whether a prudent person would reasonably foresee that an injury of this type would result from violation of the statutory duty. (*Ney*, 2 Ill. 2d 74, 117 N.E.2d 74.) Moreover, an intervening cause can break the causal connection between the original wrong and the injury unless the intervening cause is in itself foreseeable. *Ney*, 2 Ill. 2d 74, 117 N.E.2d 74; *Johnston v. City of East Moline* (1950), 405 Ill. 460, 91 N.E.2d 401.

Plaintiff argues that determinations of foreseeability or proximate cause are generally questions of fact to be decided by a jury, and we agree. Where, however, the injury is so remote that reasonable men would not differ as to a finding of no proximate cause, courts can make such determinations as a matter of law. See *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665; *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99; W. Prosser, Torts §43 (4th ed. 1971).

Plaintiff cites the cases of *Mangan v. F.C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374, and *Enis v. Ba-Call Building Corp.* (7th Cir. 1980), 639 F.2d 359, as authority for the proposition that reasonable men could differ as to whether the decedent's injury and death were foreseeable consequences of defendant's statutory violation. In *Mangan*, plaintiff filed a complaint based on two theories of negligence, one being the *per se* violation of a statute requiring defendant landlord to keep plaintiff tenant's apartment free of rodent infestation. Plaintiff, while opening her oven door, was startled by a mouse that jumped out of the oven, causing her to fall and become injured. The court, without substantial analysis, determined that plaintiff's injury was of a type that the relevant ordinance was, in general, designed to prevent and it was therefore a jury question whether the ordinance violation proximately caused plaintiff's injury. (*Mangan*, 32 Ill. App. 3d 563, 336 N.E.2d 374.) We note that *Mangan*

involved no intervening action or force on the part of plaintiff that would break the causal connection between the breach of the statutorily prescribed duty and the resulting harm to plaintiff. The analysis in *Mangan* was based squarely on whether the statute in question was, in general, designed to protect against the type of event causing plaintiff's injuries.

In *Enis*, plaintiffs were injured by boiling water spilled from a turkey kettle which was on a kitchen stove for the purpose of providing heat to an apartment owned by defendant. Defendant was required by local ordinance to provide heat at minimum temperatures which it had failed to do. The United States Court of Appeals for the Seventh Circuit, citing *Mangan* as primary authority, held that injuries arising from the use of alternative heating methods were foreseeable consequences of defendant's failure to provide heat. Furthermore, it was not so clear as to what events had immediately transpired prior to the water spilling on plaintiffs so as to take this cause from the trier of fact. In essence, the court stated that the intervening cause of the injury was in itself foreseeable. (*Enis*, 639 F.2d 359.) In his dissent, Judge Pell opined that there should be no recovery in this case. He reasoned that the construction of the particular statute for determining its intent was a matter of law and, therefore, the issue of proximate cause was necessarily intertwined to some degree. Although he conceded that the use of alternative heat sources was foreseeable, he suggested that the use of a kettle to boil water was a normal use for a kettle and to invoke liability because someone was injured as a result of said normal use was not foreseeable and, therefore, not intended to be protected by the statute in question. Citing *Cook v. Seidenverg* (1950), 36 Wash. 2d 256, 217 P.2d 799, Judge Pell essentially determined that there must have been some intervening force causing the boiling water to spill which caused the injury. *Enis*, 639 F. 2d at 365 (Pell, J., dissenting).

■ *Mangan* is distinguishable from this case. In *Mangan* there was no intervening force to be considered. *Enis*, although not entirely distinguishable, is not controlling. We agree with plaintiff herein that the use of an alternative heating source was a foreseeable event resulting from defendant's failure to provide heat. In *Enis*, however, the appliance used to provide alternative heat (*i.e.*, the turkey kettle) was used in its common and normal method albeit for a different purpose. That is not true in this case. It is general common knowledge that a charcoal grill is not intended to be nor is it commonly used indoors. As a matter of law, no reasonable men could differ on this point. Actionable negligence is cause related, not merely injury re-

lated. The decedent's act of operating a charcoal grill indoors without ventilation is an intervening force, which is in itself not reasonably foreseeable, therefore breaking the causal link between defendant's failure to provide heat and decedent's resulting death from carbon monoxide asphyxiation. The statute in question was not intended to protect tenants from their own unforeseeable negligent conduct.

For all of the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

BARRY and HAASE, JJ., concur.