PATRICIA BLOCK, Indiv. and as Guardian of the Person and the Estate of the Disabled Person, Clifford Block, Plaintiff-Appellant, v. LOHAN ASSOCI-ATES, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—91—2803

Opinion filed June 23, 1993.—Rehearing denied October 8, 1993.

William J. Harte, Ltd., and Keith L. Davidson, both of Chicago, for appellant.

Gerald L. Angst and Gloria R. Mitka, both of Sidley & Austin, of Chicago, for appellee Lohan Associates, Inc.

Marc C. Friedlander and Clark M. Stalker, both of Schiff, Hardin & Waite, of Chicago, for appellee Chris P. Stefanos Associates, Inc.

Hinshaw & Culbertson, of Chicago (Laurie A. Siwek, Stephen R. Swofford, and Thomas C. Hofbauer, of counsel), for appellee Computerized Structural Design, Inc.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Robert L. Reifenberg, and Edward M. Kay, of counsel), for appellee Pepper Construction Company.

Sanchez & Daniels, of Chicago (Manual Sanchez and Daniel A. Celske, of counsel), for appellees Contemporary Precast Products, Inc. and Kamm Leasing Company.

JUSTICE GREIMAN delivered the opinion of the court:

Patricia Block (plaintiff) appeals from a summary judgment in her action to recover damages for personal injury and loss of consortium after her husband, Clifford Block (Block), sustained severe head injuries in a fall at a construction site. Block was employed

by Concrete Erectors, a company hired to attach precast concrete cladding to the outside of the finished building and columns.

## THE DEFENDANTS

*Lohan Associates, Inc.* (Lohan), was engaged by the owner, Rockwell International Corp. (Rockwell), to perform the architectural and engineering design. Lohan was to furnish all necessary plans, specifications, and calculations for construction and to review and approve the work for conformity to the architectural and engineering design intent. Lohan had the right to inspect the work, have open access to the work, to interpret all contract documents as necessary for the proper execution of the work, and further, the right to recommend to the owner whether to accept the work or to stop the work. Lohan was to visit the site periodically to insure that the work conformed to the contract documents. Plaintiff alleges Lohan violated the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.)* and was guilty of negligence and wilful and wanton conduct against Block.

*Chris P. Stefanos, Inc.* (Stefanos), was a subcontractor of Lohan engaged to provide architectural engineering services that Lohan had agreed to perform for Rockwell, to review contractor's submittals and to inspect the site to determine if the work conformed to the design concept. Plaintiff alleges Stefanos was guilty of negligence toward Block.

*Pepper Construction Company* (Pepper) contracted with Rockwell to act as general contractor; Pepper was to supervise and direct the construction and to be responsible for all means and methods of construction and the procedures for coordinating all parts of the work; to initiate, maintain and supervise all safety precautions and programs in connection with the work; to take all reasonable precautions and to provide all reasonable protection for workers; and to comply with all applicable laws, ordinances and rules bearing upon the safety of workers. Pepper had the right to subcontract the work, to supervise and control the work, and to enforce against each subcontractor any and all rights of Rockwell against Pepper, including the right to inspect, stop, and reject the work. Plaintiff alleges Pepper violated the Structural Work Act and was guilty of negligence and wilful and wanton conduct against Block.

*Contemporary Precast Products, Inc.* (Contemporary), subcontracted with Pepper to perform the cladding design, fabrication and erection. Contemporary was required to: furnish all equipment and material to execute the concrete precast work in strict accordance with the contract documents, including the architectural precast

specifications; do the necessary engineering work required to meet the performance requirements in the contract documents, and consider the necessary interface and coordination between the building structure and the architectural precast concrete; provide all engineering and structural calculations to comply with the requirements of the performance specifications; and comply with all safety and OSHA requirements, including Pepper's in-house safety regulations. Plaintiff alleges Contemporary violated the Structural Work Act and was guilty of negligence and wilful and wanton conduct against Block.

*Computerized Structural Design, Inc.* (CSDI), subcontracted with Contemporary to design the cladding. CSDI's duties included the responsibility for the structural design of the precast panels and their connections to the building frame, and provision of all precast erection, fabrication, layout and other drawings necessary for the complete approval by the architect and structural engineer of the precast architectural panels. Its contract excluded any duty to perform a structural review of structures supporting or bracing the precast panels and all requirements of the precast specifications, except those relating to the structural integrity of the precast panels. Plaintiff alleges that CSDI was guilty of negligence toward Block.

*Kamm Leasing, Co.* (Kamm), performed the mobile crane hoisting for the cladding erection, although it is unclear who actually engaged this defendant. The same individual, Richard Kammerer, was the president of Contemporary, Kamm, and Concrete Erectors, Block's employer. Plaintiff alleges that Kamm was guilty of negligence towards Block.

The trial court granted summary judgment to all defendants on all counts.

However, for the reasons set forth hereafter, we reverse as to the negligence and Structural Work Act liability of Pepper and Contemporary and as to the negligence of Kamm; we affirm the summary judgment as to Lohan, Stefanos and CSDI, and affirm as to Lohan, Pepper and Contemporary the allegations of wilful and wanton misconduct.

## THE COMPLAINT AND TESTIMONY

On November 3, 1988, at approximately 7:45 a.m., Clifford Block, a construction foreman for Concrete Erectors, Inc., suffered severe injuries, including a depressed skull fracture, after he fell from a ladder during construction of an office complex in Westmont, Illinois. Plaintiff alleges that Block was on the ladder leaning to his left in an effort to reach for a crane's "whip" line from which a large "head-

ache" ball and hook were being lowered. While no witnesses saw the accident happen, plaintiff alleges that Block was reaching for the line in order to attach a "boatswain's chair" to it so that he or another worker could weld wall connections for panels from outside of the building. Plaintiff alleges that the crane operator lowered the whip line "in the blind" without relying on some method of communication with Block, and the ball and hook either struck Block or somehow caused him to fall from the ladder. When Block fell, he landed partly in an uncovered foundation dugout made of concrete, with the boatswain's chair lying near him, upside down. The dugouts, at least several feet deep, were usually covered with plywood so workers could safely cross over them.

The building designer called for a precast concrete wall system in which panels (cladding) were to be attached to the outside walls of the building. Due to the design of the building, some parts of the outside building frame were not accessible to workers from inside the building. In that case, a worker would then sit in the boatswain's chair attached to the crane's whip line and weld wall connections to the building frame in order to attach the cladding.

Plaintiff contends on appeal:

(1) Genuine issues of material fact exist as to the negligence of all defendants and that the conduct of each of the defendants was a proximate cause of plaintiff's injuries;

(2) Genuine issues of material fact exist, under the Structural Work Act, as to whether Lohan, Pepper and Contemporary "had charge of" the work and as to whether they "wilfully" violated the Act; and

(3) Genuine issues of material fact exist as to the wilful and wanton misconduct of Lohan, Pepper and Contemporary.

Plaintiff provided four experts whose opinions included a belief that Contemporary's failure to tender an erection plan to Lohan or Pepper at the planning stages caused or contributed to Block's injuries since it caused the erectors to select an unsafe improvisation to overcome a problem that should have been anticipated during the planning and design stages.

The unsafe improvisation was the placement of a man in a boatswain's chair attached to the crane's whip line while the crane simultaneously supported a load (a panel) with its boom line, thus requiring the worker to traverse across the face of the building like a spider. It was the attempt to achieve the placement of Block in the boatswain's chair that resulted in the accident.

The experts testified that it was a violation of American National Safety Institute (ANSI) standards for the crane operator to attach

the boatswain's chair to the whip line as a personnel hoist while simultaneously hoisting a load on the boom line. Rather, an independent hoisting device should have been used to operate the boatswain's chair. One expert believed that the boatswain's chair may not be used at all as a personnel hoist on a crane, pursuant to ANSI standard B30.5, while another thought that a boatswain's chair may be used under the proper conditions, which did not exist in this case. It was stated that ANSI and Occupational Safety and Health Administration (OSHA) standards should apply to this accident since Block was attempting to "rig a load" within the meaning of those regulations.

Regarding the use of the ladder, plaintiff's experts testified that Block most likely fell while on the ladder holding the boatswain's chair. One expert believed that Block was ascending the ladder while carrying a boatswain's chair when he fell. He stated that while safety standards recommend a worker use two hands when ascending a ladder, Block could have ascended the ladder using both hands, even while carrying the chair.

Expert testimony included the belief that the general contractor and the supervising contractors should have been aware of Block's use of the ladder in the erection procedure. Not only should the general contractor have been aware of the use of the ladder prior to the erection process, but it was also made aware of the use of the ladder since other panels had already been erected in the same manner.

Another expert stated that the general contractor should have determined how the ladders at the site were being used in conjunction with the erection procedure, evaluated whether such use was appropriate or not and corrected any improper use of the ladders prior to use of the ladders. The general contractor should also have corrected the improper use of the crane's whip line in the blind, where a worker in a boatswain's chair suspended from the whip line would have to propel himself, by kicking or pushing, across the face of the building or around a corner of the building to weld, out of view of the crane operator.

A proper erection plan might have included the use of a boatswain's chair, but a proper plan would have obviated the need to climb a ladder to attach the chair to the hook of a crane's whip line and would have overridden the need to use the whip line of the crane.

One of the experts testified that where there is a chance that a ladder may be displaced, that ladder must be secured at the top before it is used at the work site, and it is the responsibility of the person who is in control of the safety conditions at the jobsite to make sure it is secured. Moreover, a general contractor should be

aware of the tools used in an erection plan, including any use of ladders, before the erection takes place. The expert further testified that it should be foreseeable by the general contractor or supervising contractors that such a ladder will be used improperly and they then have an opportunity to correct such intended use by substituting proper methods.

Plaintiff's expert opined that the general contractor or supervising contractors here need not have been at Block's side as the ladder was placed, but they had a duty to find out in advance how Block was going to perform his work and use the ladder.

Several of Block's co-workers also provided depositions.

One was on the roof of the building and observed Block's signal for lowering the whip line when Block was one foot from the ladder and observed Block on the ladder one-quarter of the way up. As the line continued to descend, he did not watch Block, but heard "Hold it" spoken from below. When he next looked, Block was lying on the ground and the ball and hook were just below the first floor.

The crane operator testified that he hoisted the column cover on the boom line while it was held in place by two of the workers. The whip line with the ball and hook was lowered, but because of the angle of the whip line, a worker was required to hold it away from the roof of the building.

The operator lowered the ball and hook slowly from the roof—about 12 feet in 30 seconds—when he felt the ball hit the side of the building, and he stopped lowering the line about six feet from ground level and beyond his line of vision.

Another co-worker was working on a ladder close by but around the corner from Block. He observed Block walking toward the ladder and knew that the process was for Block to attach the boatswain's chair to the hook on the whip line. He heard Block holler "Hold it" and believed that Block's voice was at his height level. He sensed an urgency or forcefulness in Block's statement and then heard a thump and another worker's expletive. When he peered around the corner, Block was lying on the ground.

In addition, plaintiff engaged a reconstruction expert who opined that Block fell from a substantial height on an uneven, open surface; that he had lost his grip and balance and that he was holding the boatswain's chair when he fell while attempting to attach it to the crane. Reconstruction experts may testify where there are no eyewitnesses to the occurrence and it is necessary to rely on the knowledge and application of principles of physics, engineering and other sciences beyond the ken of the average juror. *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 392 N.E.2d 1; *Colonial Trust &*

*Savings Bank v. Kasmar* (1989), 190 Ill. App. 3d 967, 546 N.E.2d 1112; *Lively v. Kostoff* (1988), 167 Ill. App. 3d 384, 521 N.E.2d 554.

## PEPPER—GENERAL CONTRACTOR

Plaintiff argues that general contractor Pepper undertook a plethora of duties as general contractor and failed in many of them, including the duty to take all reasonable precautions for the safety of workers; the duty to meet its obligation to be responsible for and supervise Contemporary's precast work; and the duty to provide and maintain a proper covering over the foundation dugout into which plaintiff fell. Plaintiff's experts all agreed that Pepper had failed in several of its duties as general contractor.

The contract imposed upon Pepper the duty to initiate, maintain and supervise safety precautions and programs; take reasonable precautions for the safety of workers and to provide all reasonable protection to prevent damage, injury and loss to employees on the work; comply with all applicable laws, ordinances, rules and regulations bearing on the safety of a person or persons; and to erect and maintain, as required by existing conditions and the progress of the work, all reasonable safeguards for safety.

Pepper was responsible for supervising Contemporary's work to insure that all the precast work complied with the contract documents. However, the record discloses that Pepper did not require Contemporary to comply with the requirement to submit an erection procedure or to in any way indicate Contemporary's expected need or use of scaffolding or bracing, although Pepper's superintendent testified that exterior means of support would be required for erection of upper column cover wells and that tall ladders and tubular scaffolding would be unsuitable in that situation because of the ground conditions and traffic in the area. In this regard, Pepper failed to provide a safe work environment.

Pepper's supervisory and safety employees had actual knowledge that a boatswain's chair was being used for the precast erection although such usage violated Pepper's own safety rules.

Plaintiff also charges that Pepper failed to provide a proper covering for the concrete foundation dugout located directly underneath the column cover where Block was found injured and that it was Pepper who removed the plywood that had covered the dugout the day before in order to support the ground level precast column cover.

■ We find that plaintiff has raised genuine issues of material facts as to the duties imposed upon Pepper to supervise and direct the work; to be responsible for all construction means, methods, techniques, sequences and procedures; to coordinate all work under the contract; and to be responsible for the safety of Block.

To find a defendant liable for negligence, a trial court must first determine as a question of law whether plaintiff has established that defendant owed a duty of care to plaintiff. *(Mitchell v. City of Chicago* (1991), 221 Ill. App. 3d 1017, 1020, 583 N.E.2d 60.) When negligence is based upon a contractual obligation, the scope of duty is determined by the terms of the contract. *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480-81, 475 N.E.2d 822.

Unless a duty is owed, there is no negligence; therefore, there need be no determination of proximate cause unless there is a prior determination of duty. *(American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 26, 594 N.E.2d 313; *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 365, 537 N.E.2d 738; *Benjamin v. Atchison, Topeka & Santa Fe Ry. Co.* (1992), 225 Ill. App. 3d 608, 613, 588 N.E.2d 378; *Trucco v. Walgreen Co.* (1991), 219 Ill. App. 3d 496, 498, 579 N.E.2d 1018.) We carefully note the supreme court's admonition that the elements of duty and proximate cause must be analyzed separately, and that the issue of causation may not be taken up unless a duty has been found. *Dunn,* 127 Ill. 2d at 364.

We now turn to the issue of proximate cause. Proximate cause is defined as that cause which produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. *(Durbin v. St. Louis Slag Products Co.* (1990), 206 Ill. App. 3d 340, 356-57, 564 N.E.2d 242.) However, there can be more than one proximate cause of an injury. *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 17, 413 N.E.2d 1242; *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 317, 45 N.E.2d 665; *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 648, 577 N.E.2d 779; *Windeguth v. National Super Markets, Inc.* (1990), 201 Ill. App. 3d 35, 37, 558 N.E.2d 548.

In negligence cases, proximate cause is generally an issue for the trier of fact. *(Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 393, 493 N.E.2d 1022.) It becomes a question of law only when the material facts are undisputed and there can be no difference in the judgment of reasonable persons as to the inferences to be drawn from them. *(Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203; *Moreno v. Balmoral Racing Club, Inc.* (1991), 217 Ill. App. 3d 365, 368, 577 N.E.2d 179; *Prichard Tower Erections, Inc. v. Great American Insurance Co.* (1991), 215 Ill. App. 3d 1053, 1057, 576 N.E.2d 206; *Wilson v. Bell Fuels, Inc.* (1991), 214 Ill. App. 3d 868, 873, 574 N.E.2d 200.) Where inferences may be drawn from facts which are not in dispute, and where reasonable minds would draw different inferences from the facts, then a triable issue exists. *Bakkan v. Vondran* (1990), 202 Ill. App. 3d 125, 130, 559 N.E.2d 815.

While Pepper and most of the defendants contend otherwise, we determine that plaintiff has adequately established facts to charge that the risk created by Pepper's alleged breach of duty is a proximate cause of plaintiff's injuries. Defendants argue that because there were no witnesses who actually saw Block fall from the ladder, there is not sufficient evidence of the proximate cause of his fall and, thus, negligence is not proved. We disagree.

Circumstantial evidence is sufficient when it shows the probability of the existence of the fact and the circumstantial facts are of such a nature and so related as to make the conclusion reached the more probable one. *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 369, 543 N.E.2d 1304; *Stonitsch v. Laredo Construction Co.* (1991), 221 Ill. App. 3d 902, 905, 583 N.E.2d 49; *Kellman v. Twin Orchard Country Club* (1990), 202 Ill. App. 3d 968, 560 N.E.2d 888; *Bakkan,* 202 Ill. App. 3d 125, 559 N.E.2d 815.

■ The present case provides us with sufficient issues of fact as to proximate cause so as to avoid summary judgment. The testimony of plaintiff's preoccurrence and post-occurrence witnesses on the scene provides circumstantial evidence of proximate cause, although no witnesses saw Block fall. The crane operator testified that he knew Block was intending to attach the boatswain's chair to the hook so that a worker could weld the column's cover connections. A co-worker saw Block going to retrieve the boatswain's chair and knew that it was intended that either he or Block would get into the chair. Another worker saw Block start up the ladder and later heard Block say "hold it" before he saw him lying on the ground. A third worker saw Block carrying the boatswain's chair immediately prior to the accident and heard Block's urgent words, "hold it," which sounded as if they came from a height level equal to the witness' when the witness was on his ladder.

The testimony of the witnesses regarding Block's actions and speech clearly interrelate to the same sequence of events and make probable the fact that Block climbed the ladder, intending to reach the hook to attach the boatswain's chair so that a worker could use it to weld the outside connections of the column covers.

Plaintiff's experts testified that the boatswain's chair should not have been employed on this project and that independent hoist or rigging would have been appropriate. There was expert testimony that the ladder was also misused and misplaced, and we should recall that, although Block was not in anyone's line of vision, use of both ladder and boatswain's chair were proscribed.

We find the present case similar to *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157, where the court found

there was sufficient circumstantial evidence to support the inference that defendant's ladder was defective and the proximate cause of decedent's injuries. There, decedent's co-worker observed decedent standing near the ladder, saw him turn around to prepare for his descent, and then peripherally perceived decedent's fall. While the co-worker did not actually see decedent on the ladder or see him slip due to an alleged defect, the court found that it was sufficient that the co-worker witnessed decedent's actions immediately prior to the crucial instant, and that those actions clearly permit a reasonable inference that decedent intended to descend the ladder. *McKanna,* 161 Ill. App. 3d 518, 515 N.E.2d 157.

In *Housh v. Swanson* (1990), 203 Ill. App. 3d 377, 382, 561 N.E.2d 321, discovery of plaintiff on the ground with antenna wire wrapped around her legs was circumstantial evidence that defendant was negligent in failing to remove the wire from the roof or in warning plaintiff about the wire.

Our finding is also supported by *Reed v. Danville Concrete Products Co.* (1981), 102 Ill. App. 3d 205, 429 N.E.2d 605, in which the court found circumstantial evidence sufficient to prove that defendant's negligence in failing to remove its drainage tiles from an area where a scaffold was erected proximately caused plaintiff's injuries when he fell from the scaffold. In *Reed,* it was the misplaced drainage tiles that " 'in natural or probable sequence, produced the injury complained of.' " (*Reed,* 102 Ill. App. 3d at 206, quoting Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971).) This is certainly analogous to the removal of plywood covers in the case at bar.

Defendants attempt to analogize the present case to several they cite, arguing there is no one probable conclusion to be drawn from the evidence. However, most of those cases are distinguished from the one at bar in that they lack any circumstantial evidence.

Several defendants rely upon *Bakkan,* a Structural Work Act case in which decedent died from a fall from defendant's defective scaffolding, where the court found no evidence that the decedent was preparing to stand on, exit from, or even actually upon the ladder in question. Additionally, no expert testimony was offered regarding decedent's head injuries, which plaintiff contended were the result of a fall from a high place. *Bakkan,* 202 Ill. App. 3d at 129.

They also cite *Stonitsch,* a Structural Work Act case in which it was alleged plaintiff fell from a defective ladder at defendant's construction site. The court there rejected plaintiff's claim where he was found unconscious and injured at the bottom of a stairwell, stating that plaintiff could not establish that a defective ladder was the cause of the injury because of the lack of circumstantial evidence.

The court stated that "[i]f there had been any evidence that [plaintiff] had been using the ladder at the time of his fall, a material issue of fact would have been created on whether the ladder had, in fact, caused the fall." *(Stonitsch,* 221 Ill. App. 3d at 906.) There can be little question that Block was using the ladder at the time of his fall.

Also distinguishable is *Kellman,* a wrongful death case which alleged defendant's negligence in its design, construction and maintenance of a shower stall in which decedent fell. The *Kellman* court found that plaintiff failed to produce any direct evidence or witnesses to show a defect in the stall or that such defect proximately caused her husband's injuries. The court found that the circumstantial evidence was inadequate to lead a jury to reasonably conclude that the cause of decedent's fall was related to a defect in the stall's design. *Kellman,* 202 Ill. App. 3d at 975-76.

We also distinguish *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328, where that plaintiff failed to establish any evidence of why she fell or what acts or conduct of defendant caused her fall. Similarly, in *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184, there was insufficient evidence as to whether plaintiff's daughter's fall from playground equipment was caused by the defective condition of the platform area of a slide since plaintiff did not observe whether her daughter fell from the platform or from the stairs leading to the platform.

In a motion for summary judgment, the trial court's task is to determine whether a disputed question of fact exists. *(Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112, 514 N.E.2d 188.) While the pleadings, depositions, admissions and affidavits must be construed against the movant and in favor of the opponent, the judgment is granted if the pleadings, depositions, admissions and affidavits show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law. *(Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, 529 N.E.2d 552.) In reviewing the propriety of summary judgment, an appellate court applies a *de novo* standard of review to determine whether a genuine issue of material fact exists. *Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659, 567 N.E.2d 1083.

For the reasons stated, we reverse the trial court's ruling and find plaintiff has adequately demonstrated that a genuine issue of fact exists that Pepper's alleged negligence is a proximate cause of Block's injuries.

Plaintiff also contends that Pepper violated the Structural Work Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.),* which was intended to protect workers in hazardous occupations by encouraging

safe use of scaffolds, cranes, ladders or other supports for use in construction.

Section 69 of the Act provides:

> "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***.

> \* \* \*

> For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby ***." Ill. Rev. Stat. 1989, ch. 48, par. 69.

The supreme court has stated that the Act is to be given "a liberal construction to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of working in and about construction, repairing, alteration or removal of buildings, bridges, viaducts, and other structures." *(McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573.) The purpose of the Act is "protection for workmen; and the Act is construed in accordance to effect that benevolent purpose." *(Crothers v. La Salle Institutes* (1977), 68 Ill. 2d 399, 411, 370 N.E.2d 213.) Where a party created or maintains a hazardous condition within the work area, he is liable to those injured in the work area. *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 509, 373 N.E.2d 1354.

■ The elements of a cause of action under the Act are: (1) the device involved must be one listed in the Act; (2) the device involved must be used in the construction of a building or "other structure" within the Act; (3) the device must be unsafe, or not safely placed or operated (or there must be the failure to provide such a device); (4) defendants (those who are "in charge of" the work) must have "wilfully violated the Act"; and (5) plaintiff's injury must be proximately caused by defendants' violation. *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051, followed by *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223.

The Act applies if, at the time of an injury, the worker was engaged in a hazardous task that was essential to the worker's "structural" work activities, even though he was not directly engaged in a structural work activity at the time of the injury. *Dubrovich v. Commonwealth Edison Co.* (1991), 209 Ill. App. 3d 498, 502-03, 568 N.E.2d 285.

Plaintiff need not contend that the ladder, boatswain's chair or

the crane was defective *per se,* but rather, that they violate the third requirement above because they were not safely placed and operated. *Carrillo v. Pepper Construction Co.* (1990), 201 Ill. App. 3d 647, 648-50, 559 N.E.2d 191 (placement of an instrumentality may be a proximate cause of a worker being injured).

Whether a defendant such as Pepper is in charge of the work in contemplation of the Act depends upon the totality of the circumstances, and one or more parties may be in charge of the work and be subject to liability under the Act for the same injury. *(Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 123, 373 N.E.2d 1348; *Fitzpatrick v. Perry Drugs Co.* (1991), 213 Ill. App. 3d 529, 532, 572 N.E.2d 1103.) It is unnecessary that a defendant be in direct charge of the particular operation from which the injury arose if it was in charge of the overall work for the project. *Sasser v. Alfred Benesch & Co.* (1991), 216 Ill. App. 3d 445, 450, 576 N.E.2d 303; *Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 186, 498 N.E.2d 522.

■ Factors that this court has consistently used to determine whether one was in charge of the work within the meaning of the Act are: (1) supervision and control of the work or retention of the right to supervise and control the work; (2) constant participation in ongoing activities at the site; (3) supervision and coordination of the subcontractors; (4) responsibility for safety precautions at the site; (5) authority to issue change orders; (6) authority to stop work; (7) ownership of equipment used at the site; (8) familiarity with construction practices; and (9) ability to correct unsafe or improper work habits and equipment deficiencies. *(Sasser,* 216 Ill. App. 3d at 450; *Gentile v. Kehe* (1987), 165 Ill. App. 3d 802, 805-06, 520 N.E.2d 827; *Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 218, 430 N.E.2d 699.) Pepper satisfies every criteria as a party "having charge of" the work.

Defendants question whether Block was engaged in construction at the time of the accident. Several cases have determined that where a worker is engaged in a hazardous task that is essential to the worker's structural work activities, then the Act covers such activity. *Lafata v. Village of Lisle* (1990), 137 Ill. 2d 347, 358, 561 N.E.2d 38; *Dubrovich,* 209 Ill. App. 3d at 502; *Smith v. Excello Press, Inc.* (1988), 169 Ill. App. 3d 1084, 1094-95, 523 N.E.2d 1231.

The evidence is uncontroverted that the devices involved in Block's accident were a ladder, a crane, and a boatswain's chair (referred to as a scaffold by plaintiff's experts). At the time of Block's injury, plaintiff contends that he was standing on the ladder, attempting to attach the boatswain's chair to a hook at the end of the crane's whip line.

In *Gall v. Metropolitan Sanitary District of Greater Chicago* (1982), 109 Ill. App. 3d 502, 507, 440 N.E.2d 973, plaintiff's injury was covered under the Act although plaintiff was involved in the cleaning of sewage tanks before those tanks were actually repaired. The court stated that the tanks were already structures covered under the Act, since such cleaning was necessary before the repairs could be done, and plaintiff's preparation work was not in mere anticipation of construction but was the necessary first step in the plan of repair. *(Gall,* 109 Ill. App. 3d at 507.) Similarly, in the present case, Block's actions, established by testimony and circumstantial evidence, of getting the boatswain's chair and climbing the ladder to attach it to the hook of the crane were the necessary first steps to erection established by prior consistent practice at the site. Thus, we find that plaintiff may properly plead a cause of action under the Act.

Plaintiff's allegations certainly lead to the inference that had Pepper properly supervised and coordinated the activity of the erectors, and had Pepper properly covered the dugout which it had allegedly uncovered, Block would not have suffered such injuries. Clearly, reasonable people may draw different inferences from such facts.

We further find that plaintiff has sufficiently pleaded a genuine issue of fact as to whether Pepper wilfully violated the Act. A defendant is liable for a wilful violation when it is demonstrated that it knew of the existence of the dangerous condition or by the exercise of reasonable care could have uncovered the dangerous condition. Whether such a wilful violation occurred is a question of fact for the jury. *Zizzo v. Ben Pekin Corp.* (1979), 79 Ill. App. 3d 386, 395-96, 398 N.E.2d 382.

## CONTEMPORARY—PRECAST SUBCONTRACTOR

Plaintiff next contends that Contemporary, the precast concrete subcontractor to Pepper, was negligent in its duty to supervise the cladding design, fabrication and erection to ensure that the work was completed consistent with the contract documents while complying with all safety standards and OSHA regulations, including Pepper's own safety rules.

Contemporary's contract with Pepper included the duty by Contemporary to meet "all safety and O.S.H.A. requirements to perform the scope of work described herein [including] Pepper Construction Co. Safety Regulations."

Plaintiff argues that since Contemporary had the primary and direct responsibility for the precast work of design, fabrication and erection, it had the right to subcontract any and all of the work but retained a nondelegable duty to remain responsible for all of it.

Plaintiff claims that this responsibility includes an obligation to comply with the architectural and structural drawings and specifications as well as all applicable industry standards and OSHA regulations.

Plaintiff alleges that Contemporary failed to provide or even attempt to provide any coordination or work plan for its subcontractors to achieve safe and proper erection of the precast work, but rather, served merely as a message center for the subcontractors. It is contended that Contemporary's officers, Richard and Ronald Kammerer, are knowledgeable and experienced precasters who understood the necessity of coordinating and planning the precast work prior to beginning the precast construction.

Plaintiff contends, *inter alia,* that: (1) Concrete Erectors, the erectors, were never consulted before construction began regarding the safe and proper method of erecting the precast corner columns; and (2) Contemporary failed to oversee any coordination between CSDI and the erectors for any needed exterior support in doing the welding, such as scaffolding or a boatswain's chair.

Three of plaintiff's experts testified that since an erection plan was required, Contemporary was responsible for preparing one or seeing that one was prepared.

One expert stated that Contemporary failed to formulate or tender such a plan until the time of the accident, and failed to comply with the architect's specifications for the erection plan, for the design connection, or for the supervising and directing of the construction. He further opined that Contemporary's failure in the planning stages to tender an erection plan to Lohan or Pepper caused or contributed to plaintiff's injury, since it caused the erectors to select an unsafe, improvised method of erection (use of the boatswain's chair) to overcome a problem that should have been anticipated during the planning and design stages.

The experts agreed that the plan of erection chosen at the jobsite was unsafe but that a plan of erection should be the product of discussions between the precaster and the erector, with the precaster usually devising the plan since it is in the best position to interpret the architect's specifications.

●5 We find that plaintiff's pleadings and depositions properly allege a genuine issue of material fact whether defendant Contemporary was negligent under its contractual duty to remain primarily responsible for the precast erection design, fabrication and procedure. Contemporary was required to strictly adhere to the specifications which require that an erection procedure accompany the shop drawings.

Reasonable persons may draw different inferences from the facts established. However, the inference remains that Contemporary failed to provide or oversee an erection plan, and such failure may reasonably be inferred to be a proximate cause of Block's injury, since Block was attempting to use the boatswain's chair to weld and the use of the chair was an alternative improvised at the site in the absence of a safe erection plan.

Plaintiff also charges that Contemporary violated the Structural Work Act when it breached duties while it had charge of the work. We agree with plaintiff's contention.

In comparing Contemporary's responsibilities with those factors consistently used by this court to determine whether a party has charge of the work for purposes of liability under the Act, we find that its duties were very specific to the erection of the precast: it was to directly supervise and control the precast erection; it participated in the ongoing activities at the site; it was to supervise and coordinate its subcontractors, Kamm Leasing and Concrete Erectors; and it had a duty to comply with all safety measures at the site and to insure the safety of workers. See *Sasser*, 216 Ill. App. 3d at 450.

■ The duties delineated and evidenced in the record amount to Contemporary having charge of the work. The record also sufficiently alleges a breach of those duties. We find that plaintiff has clearly established a genuine issue of fact as to whether Contemporary proximately caused Block's injuries under the Act. A question of proximate cause is raised in that, but for Contemporary's evidently inadequate coordination and supervision of the activity of its workers and subcontractors, its evidently inadequate safety measures, and the circumstantial evidence surrounding Block's activities on the ladder, Block would not have been injured.

We further find that plaintiff has sufficiently raised a question of fact that Contemporary wilfully violated that act. A wilful violation is demonstrated when it is established that a defendant knows of the dangerous condition or by the exercise of reasonable care, could have uncovered the dangerous condition. Whether such a violation occurred is a question of fact for the jury. *Zizzo*, 79 Ill. App. 3d at 395-96.

## CSDI—ENGINEERING SUBCONTRACTOR

Plaintiff next argues that CSDI, Contemporary's subcontracted engineer for the precast cladding and its connections to the building frame, was also negligent in meeting its obligations. Plaintiff charges that CSDI failed in its duty to consider, during the design stage, the manner in which the precast column covers and their welded connections could be appropriately erected.

CSDI contends that its contract with Contemporary expressly excludes all requirements regarding submittal of erection procedures and pertains only to conservation of structural integrity.

Plaintiff does not charge that CSDI is liable for not submitting an erection plan. Rather, plaintiff's experts appear to claim that CSDI was obligated, in engineering the design of the precast panels and their connections, to meet others' performance criteria, to consider the constructability of the design, and to specify for Contemporary those aspects of the erection procedure affecting the structural integrity of the panels and their connections, such as temporary bracing, the locations of lifting inserts, and the sequence of erection. Plaintiff acknowledges that other aspects of the erection plan needed to be developed by others and that the obligation to submit the erection plan as a whole rested on others.

Plaintiff contends that CSDI, as the designing engineer, bears the responsibility to determine the method of temporary bracing of the precast, if any is needed, because that determination requires an engineering judgment based upon the designer's knowledge of the forces that must be tolerated in erecting the precast. Plaintiff argues that, even though CSDI's contract stated that CSDI was responsible only for specifications pertaining to structural integrity of the precast, it did not relieve CSDI of the obligation to determine the method of temporary bracing since such bracing is fundamental to responsibility for the structural integrity of the precast panels.

■ CSDI argues that the contract limits its liability to the duties specified and makes clear that CSDI neither undertook nor had a duty to submit erection procedures. CSDI contends that plaintiff ignores the fact that the contract requires no participation of CSDI at the construction project and places no duty on CSDI, as the designer, to supervise construction means, manners and methods. As a matter of law, it is the court which determines the existence of a duty owed plaintiff by defendant, and the trial court has correctly determined that no duty exists.

The limited responsibilities of CSDI cannot be enlarged by the avalanche of expert testimony on collateral issues to impose a duty upon CSDI.

## KAMM—CRANE OPERATOR

Now we turn to plaintiff's contention that Kamm Leasing's crane operator was negligent and violated standards of the American National Standards Institute (ANSI) and regulations of the Occupational Safety and Health Administration (OSHA) by: (1) negligently operating the crane "in the blind" by lowering the whip

line with the headache ball and hook around the corner of the building, so that Block could not see the operator and there was no "signal man" to relay information regarding movement of the crane's lines; (2) improperly using the whip line to suspend a boatswain's chair while simultaneously using the "load line" to hoist and hold column covers; and (3) improperly using the load line to temporarily brace the column covers in place.

Three structural engineers gave expert testimony for plaintiff which criticized the crane operator's performance and the violation of ANSI and OSHA standards. One expert stated that the operator violated (ANSI) standard USA 5B 30.5 (1968), which advises against the "sideloading" of cranes, that is, using the boom line (a load line attached to the crane's boom) to pull or drag into position the column cover panel to keep it in place against the side of the building.

Another of plaintiff's experts criticized the operator for operating the crane in the blind. It was his opinion that an independent hoisting device should have been used to operate the boatswain's chair instead of the crane since using the crane boom to hoist both the loadline (to which the column cover was attached) and the whip line (to which the boatswain's chair was attached) eliminates independent use of those lines and it is bad practice to hoist a person under a crane line carrying a load.

Still another expert interpreted ANSI standard B30.5 to disapprove any use at all of a boatswain's chair as a personnel hoist on a crane line and stated that he had never heard any opinion that it was permissible to hang a boatswain's chair from a crane as a personnel hoist.

To find a defendant liable for negligence, a trial court must first determine as a question of law whether plaintiff has established that defendant owed a duty of care to plaintiff. (*Mitchell,* 221 Ill. App. 3d at 1020.) When negligence is based upon a contractual obligation, the scope of duty is determined by the terms of the contract. (*Ferentchak,* 105 Ill. 2d at 480-81.) Absent a contract, we must determine whether plaintiff presented sufficient facts to establish the existence of a duty of care owed to plaintiff, a breach of that duty, and an injury that proximately resulted from that breach. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223; *Carrizales v. Rheem Manufacturing Co.* (1991), 226 Ill. App. 3d 20, 24, 589 N.E.2d 569; *Trucco,* 219 Ill. App. 3d at 498.

Here, Kamm had no written subcontract with Contemporary, and the evidence fails to disclose if Kamm was retained by Contemporary or by Concrete Erectors.

■ However, we find that plaintiff has established a genuine issue

as to whether Kamm's crane operator was negligent in continuing to lower the whip line carrying the ball and hook past the point where the operator could no longer observe them, and that there is sufficient evidence of a violation by Kamm of its duty of reasonable care for Block's safety. We further find that plaintiff has adequately alleged that Kamm violated ANSI standard USA 5B 30.5 and OSHA regulation 29 C.F.R. § 1926.451 (1992).

Kamm argues that because there were no witnesses who actually saw Block fall from the ladder, there is not sufficient evidence of the proximate cause of his fall, and thus negligence is not proved. However, we cite here the same cases we relied upon to fix possible liability upon Pepper: *McKanna, Housh and Reed;* and similarly distinguish *Bakkan, Stonitsch and Kimbrough.*

## LOHAN—ARCHITECT

Plaintiff also contends that architect Lohan was negligent in supervising and coordinating the work of its consulting structural engineer, Stefanos, and thus was a principal party responsible for the unsafe design and the failure to effect a safe construction plan. Plaintiff argues that Lohan was negligent in failing to exercise its right to have access to the work, to inspect the work and to recommend to the owner to stop the work as authorized by the contract.

Plaintiff argues that Lohan failed to meet its contractual obligations to review and approve submissions of the precast contractor, Contemporary, to determine whether they conform to design intent and failed to request that Stefanos, its consulting engineer, do so; failed to require that the erection procedures be submitted with shop drawings to Contemporary or to Pepper which would have disclosed the need for scaffolding or other erection equipment to be employed; failed to require Contemporary, the precast subcontractor, to submit an erection procedure; failed to design connections for the column covers that would not require extraordinary exterior support; failed to appoint a competent person to review the various submittals; failed to properly supervise the engineering of its subcontractor and to coordinate the engineering of the building frame and the precast cladding; failed to properly plan and coordinate Contemporary and Pepper activities; and failed to perform an alleged duty of on-site inspections to determine if the work was proceeding in accordance with the contract.

■ Plaintiff's allegations are not borne out by the record. The contract documents uniformly and clearly limit Lohan's responsibility to design and determination as to design conformance and do not extend to worker safety.

Plaintiff acknowledges that Lohan was under no contractual requirement to be responsible for the means, methods, techniques, sequences or procedures or for safety precautions or programs in connection with its work, or for the contractor's failure to carry out the work in accordance with the contract documents, or for the acts or omissions of the contractors or subcontractors in performing their work.

Similarly, Lohan was not required to inspect or supervise the work site or approve the work, and on-site inspections were only for the purpose of determining conformance with the design concept.

By contract and in fact, Lohan did not have control or charge of construction means, methods, techniques, sequences or procedures or safety precautions in connection with the construction.

While Lohan may have had some responsibility to oversee the requirement that an erection procedure be submitted along with shop drawings in order to ensure design compliance, such a variance fails to establish that Lohan owed a duty to Block or that its conduct was a proximate cause of Block's injuries.

Plaintiff also contends that Lohan violated the Structural Work Act since evidence sufficiently demonstrates that it was a party having charge of the work, as specified in the Act.

Plaintiff argues that Lohan (1) had charge of overseeing the project to ensure that the design specifications were met; (2) that it contracted to perform the engineering design; (3) that while it directed the general contractor, Pepper, to submit all structural engineering questions to Stefanos, the structural engineer, Lohan remained responsible for supervising and coordinating the work of the structural engineer; (4) issued architectural drawings and specifications, and, with Stefanos' assistance, structural engineering drawings and other requirements; (5) had the right to have access to the work at all times; (6) had the right to inspect the work; (7) had the right to interpret the contract documents to ensure the proper execution and progress of the work; and (8) had the right to recommend to the owner whether to accept the work or to stop the work.

We affirm the trial court's finding that plaintiff failed to raise a genuine issue of fact as to whether Lohan had charge of the work.

Whether a defendant is in charge of the work depends upon the totality of the circumstances, and one or more parties may be in charge of the work and be subject to liability under the Act for the same injury. (*Emberton,* 71 Ill. 2d at 123; *Fitzpatrick,* 213 Ill. App. 3d at 532.) Although it is unnecessary that a defendant be in direct charge of the particular operation from which the injury arose if it was in charge of the overall work for the project, we consider the

same criteria that established Pepper's liability under the Act. *Sasser,* 216 Ill. App. 3d at 450; *Kohutko,* 148 Ill. App. 3d at 186.

The *Sasser* court found in favor of defendant, a structural engineering firm. In that case, summary judgment was appropriate as to a structural engineer retained to observe the construction site for compliance with plans and specifications and without authority to direct the manner in which the work was done. Lohan's contractual responsibilities were much the same as those of the engineer in *Sasser.*

The *Sasser* court noted that the right to stop work is the distinguishing fact in most cases where consideration is given as to whether architects or engineers were parties in charge. *(Sasser,* 216 Ill. App. 3d at 451.) Other cases have also made that distinction. *McGovern v. Standish* (1976), 65 Ill. 2d 54, 69, 357 N.E.2d 1134; *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 286, 226 N.E.2d 630; *Diomar v. Landmark Associates* (1980), 81 Ill. App. 3d 1135, 1141-44, 401 N.E.2d 1287; *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 1059, 398 N.E.2d 60.

In *Fruzyna,* the court stated that it "may not infer the right to stop work from the right to reject work. The authority to stop work must be clear and not assumed." *(Fruzyna,* 78 Ill. App. 3d at 1058.) While plaintiff favorably cites *Emberton,* the defendant architect there had a project representative at the site continuously for three years who was highly involved in the contractor's work and safety procedures, and further had the authority to stop work. *Emberton,* 71 Ill. 2d at 122-24.

While plaintiff may argue that Lohan meets several of the suggested criteria to find it in charge of the work, from the totality of the circumstances, we cannot say that Lohan was so involved.

We therefore affirm the trial court's summary judgment in favor of Lohan as to negligence and liability under the Structural Work Act.

## STEFANOS—DESIGN ENGINEER

We next discuss plaintiff's negligence claim as to Stefanos, Lohan's consulting structural engineer. Plaintiff charges that Stefanos failed to perform its contractual duty to review the submissions of the precast subcontractor and disapprove of them, as required by the architectural engineering specifications, because the submissions: failed to comply with the lateral force requirements in the specifications; failed to contain an erection procedure; and failed to indicate the use of scaffolding and temporary bracings, if any were necessary, as required by the structural engineering drawings.

Plaintiff also charges that Stefanos failed to properly coordinate the engineering of the building frame with that of the precast column covers and could easily have communicated with CSDI to locate the column cover connections at the roof line, thus eliminating the need for the boatswain's chair procedure or any other use of any exterior means of support by the precast erectors.

Plaintiff's expert opined that there was inadequate interchange between Stefanos, the building engineer, and Becker of CSDI, the panel structural engineer, to achieve a mutual accommodation of each other's materials and to make the precast connections more accessible; he further stated that Stefanos should have been more involved in the details of the precast panel connections and computations. The expert stated Stefanos was a proximate cause of Block's injuries, since if Stefanos had performed in the areas it found deficient, the accident would not have occurred.

■ We find Stefanos situated similarly to Lohan. As a structural engineer hired to design the structural frame of the building, its relevant contract documents evince a clear intent that it is not responsible for safe working conditions and further had no duty to ensure the safety of the means, methods and procedures of construction.

Structural engineering drawings prepared by Stefanos and issued by Lohan included legends that their work did not indicate the means or method of construction and that the contractor would be required to provide all measures necessary to protect the structure, workmen or other persons during construction. Additionally, the legend directed that the plan required the services of a licensed structural engineer to design and supervise any scaffolding for workmen and all shoring of forms and elements of the construction.

We find that Stefanos had no legal duty, as the designer of the building's structural frame, to ensure the safety of the workers erecting precast panels.

Therefore, we affirm the trial court's summary judgment in favor of Stefanos as to negligence.

## WILFUL AND WANTON

■ We believe there is nothing in the record upon which to base a claim that the parties, or any of them, have been guilty of wilful and wanton conduct. While sharing some characteristics of negligence, wilful and wanton conduct is generally defined as follows:

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after

knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care." *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015. See also *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 451, 593 N.E.2d 522.

However, the court noted that the standard for such misconduct is a matter of degree, thus:

" 'a hard and thin line definition should not be attempted. *** [A]s to whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence, and while the rule of law does not vary, the facts to which the law is applicable always present divergent circumstances and facts which, in most instances, are wholly dissimilar.' " *O'Brien*, 83 Ill. 2d at 469, quoting *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 430, 412 N.E.2d 447.

It is established law that the same actions may be done negligently or with wilful and wanton disregard, and that allegations for wilful and wanton conduct will not fail simply because they mirror allegations for negligence and merely change the state of mind. *O'Brien*, 83 Ill. 2d at 468-69; *Ward v. Community Unit School District No. 220* (1991), 213 Ill. App. 3d 1008, 1017, 572 N.E.2d 986.

To sufficiently plead wilful and wanton conduct, plaintiff must allege facts demonstrating the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *(Ward,* 213 Ill. App. 3d at 1016; *Tijerina v. Evans* (1986), 150 Ill. App. 3d 288, 291, 501 N.E.2d 995.) The facts alleged do not, however, rise to the level of wilful and wanton conduct.

We find that the trial court correctly determined that plaintiff's complaint did not sufficiently plead facts to allege the parties' intentional or reckless disregard for Block's safety.

■ We further find that plaintiff properly states a claim for loss of consortium under the Structural Work Act, according to *Harvel v. City of Johnston City* (1992), 146 Ill. 2d 277, 293, 586 N.E.2d 1217, which finds that the spouse of a worker covered by the Act is a "party injured" under the Act and may recover damages for loss of consortium as direct damages under the Act.

For all of the foregoing reasons, we affirm in part the trial court's determinations and reverse in part and remand.

Affirmed in part and reversed in part and remanded.

TULLY, P.J., and CERDA, J., concur.